No. 25-10259

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

Brittney Kennedy, Individually and as Surviving Spouse, on Behalf of Minor M.S.K. and as Anticipated Personal Representative of the Estate of Marquis Kennedy,

Plaintiff-Appellant

v.

City of Arlington, Texas; Shelly Bateman; Jonathan P. Bucek; Richard Coleman; Tyler Ferrell; Patrick Knight; David Kurbinsky; Michael Leonesio; Leonard Ray; Ronnie McCoy; Bobby Mugueza; Officer Norwood; Connor Shanahan; Sean Wheatley; Jastin D. Williams; Bradley McNulty,

Defendants-Appellees

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS, FORT WORTH DIVISION

APPELLANT'S BRIEF

**Shelby J. White**
State Bar No. 24084086
swhite@dpslawgroup.com
**Thad D. Spalding**
State Bar No. 00791708
tspalding@dpslawgroup.com
**Durham, Pittard & Spalding, LLP**
P.O. Box 224626
Dallas, Texas 75222
Telephone: (214) 946-8000
Facsimile: (214) 946-8433

**Roland Witherspoon**
State Bar No. 24086097
litigation@withlaw.com
**Witherspoon Law**
7290 Crosswater Ave.
Tyler, Texas 75703
Telephone: (903) 597-2500
Facsimile: (866) 269-3770

**ATTORNEYS FOR APPELLANT**

<u>CERTIFICATE OF INTERESTED PERSONS</u>

The undersigned counsel of record for Appellant Brittney Kennedy, individually and as surviving spouse, on behalf of Minor M.S.K. and as anticipated personal representative of the Estate of Marquis Kennedy certify that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Appellant | Counsel for Appellant: |
|---|---|
| Brittney Kennedy | DURHAM, PITTARD & SPALDING, LLP<br>Shelby J. White<br>Thad D. Spalding<br><br>WITHERSPOON LAW<br>Ronald Witherspoon |
| Appellees: | Counsel for Appellees: |
| City of Arlington, Texas | CITY OF ARLINGTON<br>CITY ATTORNEY'S OFFICE<br>Cynthia Withers<br>Joshua Alan Skinner<br>Benjamin J. Gibbs<br>Alexander J. Lindvall |

| Appellees: | Counsel for Appellees: |
|---|---|
| Richard Coleman, Tyler Ferrell, Patrick Knight, David Kurbinsky, Michael Leonesio, Leonard Ray, Ronnie McCoy, Bobby Mugueza, Officer Norwood, Connor Shanahan, Sean Wheatley, Jastin D. Williams, Bradley McNulty ("Officers") | FANNING HARPER MARTINSON BRANDT & KUTCHIN, P.C. Thomas P. Brandt Christopher D. Livingston |

*/s/ Shelby J. White*
**Shelby J. White,**
Attorney of record for Appellant

## S<small>TATEMENT</small> R<small>EGARDING</small> O<small>RAL</small> A<small>RGUMENT</small>

Appellant believes that oral argument could assist the Court in understanding the events and conduct that resulted in Marquis Kennedy's death. This civil rights case arises out of an unusual factual scenario—one in which the City and its officers are accused of violating the constitutional rights of one of their own—a cadet who was training to be an Arlington police officer. During a "fight for your life" training exercise, Arlington police officers are alleged to have beaten Marquis to such a degree that it ultimately killed him. In the process, none of the other officers observing and supervising the training bothered to get Marquis the medical care that could have saved his life. Had Marquis been a pre-trial detainee, his claims would have survived the Rule 12(b) motions that were granted. They should have, and Appellant—Marquis's widow—believes that oral argument could help highlight why constitutional protection should extend to people like Marquis.

# TABLE OF CONTENTS

**PAGE**

CERTIFICATE OF INTERESTED PERSONS ...................................................... ii

STATEMENT REGARDING ORAL ARGUMENT ........................................... iv

TABLE OF AUTHORITIES ...................................................................... vii

INTRODUCTION .................................................................................... 1

JURISDICTIONAL STATEMENT ............................................................... 3

STATEMENT OF ISSUES PRESENTED ON APPEAL .................................. 4

STATEMENT OF THE CASE .................................................................... 5

    I.   Marquis Kennedy, a cadet in training to join the Arlington Police Department ("APD"), is killed by his trainers during a "fight for your life" training simulation. ............................................. 5

    II.  Marquis's widow, Brittney, sues the training officers and the City of Arlington. ......................................................................... 12

    III. The District Court Dismisses Kennedy's Claims. ............................. 13

SUMMARY OF THE ARGUMENT ............................................................ 15

ARGUMENT AND AUTHORITIES ........................................................... 17

    I.   Standard of review ................................................................... 17

    II.  Kennedy's pleading burden ..................................................... 17

    II.  Kennedy alleged willful, intentional conduct or conduct that rises to the level of deliberate indifference. ............................. 19

        A.  Willful or intentional conduct does not necessarily mean an intent to injure. ................................................................ 19

        B.  The training officers were also deliberately indifferent to Marquis's right to be free from excessive force and to bodily integrity. ......................................................................... 22

        C.  There is clearly established law that what the officers did violated the Constitution. ..................................................... 24

T<small>ABLE OF</small> C<small>ONTENTS</small> (<small>CONT'D</small>)

**PAGE**

III. Kennedy alleged sufficient facts showing a seizure under the Fourth and Fourteenth Amendments...................................................28

IV. Once Marquis was seized, he was constitutionally entitled to not be denied medical care..........................................................................30

C<small>ONCLUSION AND</small> P<small>RAYER</small> .....................................................................31

C<small>ERTIFICATE OF</small> C<small>OMPLIANCE</small> ................................................................33

C<small>ERTIFICATE OF</small> S<small>ERVICE</small> ...........................................................................34

# TABLE OF AUTHORITIES

<u>CASES</u> <u>PAGE(S)</u>

*Allen v. Hays*,
  65 F.4th 736 (5th Cir. 2023)........................................................................30, 31

*Arnold v. Williams*,
  979 F.3d 262 (5th Cir. 2020) ......................................................................18, 19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)....................................................................................17, 18

*Bell v. Wolfish*,
  441 U.S. 520 (1979)..........................................................................................26

*Collins v. City of Harker Heights, Tex.*,
  503 U.S. 115 (1992)............................................................................20, 25, 26

*DeShaney v. Winnebago Cnty. Dep't of Soc. Services*,
  489 U.S. 189 (1989)....................................................................................30, 31

*Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*,
  677 F.2d 1045 (5th Cir. 1982) ..........................................................................17

*Kinney v. Weaver*,
  367 F.3d 337 (5th Cir. 2004)............................................................................20

*Lormand v. U.S. Unwired, Inc.*,
  565 F.3d 228 (5th Cir. 2009) ............................................................................17

*Mann v. Adams Realty Co.*,
  556 F.2d 288 (5th Cir. 1977) ............................................................................17

*Morgan v. Hubert*,
  335 F. App'x 466 (5th Cir. 2009) .....................................................................18

*Nerren v. Livingston Police Dep't*,
  86 F.3d 469 (5th Cir. 1996) ..............................................................................30

TABLE OF AUTHORITIES (CONT'D)

CASES                                                                PAGE(S)

*Revere v. Massachusetts General Hospital*,
    463 U.S. 239 (1983)..................................................................27

*United States ex rel. Riley v. St. Luke's Episcopal Hosp.*,
    355 F.3d 370 (5th Cir. 2004)...................................................18

*Rios v. City of Del Rio, Tex.*,
    444 F.3d 417 (5th Cir. 2006)...................................................19

*Salas v. Carpenter*,
    980 F.2d 299 (5th Cir. 1992)...................................................20

*Santander v. Salazar*,
    133 F.4th 471 (5th Cir. 2025).......................................17, 18, 19

*Sonnier v. State Farm Mut. Auto. Ins. Co.*,
    509 F.3d 673 (5th Cir. 2007)...................................................18

*Sterling v. City of Jackson, Miss.*,
    715 F. Supp. 3d 918 (S.D. Miss. 2024) ................................22

*Terry v. Ohio*,
    392 U.S. 1 (1968)....................................................................28

*Test Masters Educ. Servs., Inc. v. Singh*,
    428 F.3d 559 (5th Cir. 2005)...................................................17

*Turner v. Pleasant*,
    663 F.3d 770 (5th Cir. 2011)...................................................17

*Turner v. Safley*,
    482 U.S. 78 (1987)..................................................................27

*Vardeman v. City of Houston*,
    55 F.4th 1045 (5th Cir. 2022)............................................28, 30

## TABLE OF AUTHORITIES (CONT'D)

**CASES**                                                                                                    **PAGE(S)**

*Waybright v. Federick Cnty, MD*,
    528 F.3d 199 (4th Cir. 2008) ............................................................................27

*Youngberg v. Romeo*,
    457 U.S. 307 (1982) .............................................................................26, 27

**STATUTES**

28 U.S.C. § 1291 ...........................................................................................3

28 U.S.C. § 1331 ...........................................................................................3

42 U.S.C. § 1983 ...................................................................................*passim*

**RULES**

Fed. R. App. P. 4 ..........................................................................................3

Fed. R. App. P. 12(b)(6) ......................................................................1, 13, 17

Fed. R. Civ. P. 8 ...........................................................................................19

## INTRODUCTION

This lawsuit arises out of a September 23, 2022, incident in which Marquis Kennedy was killed by his fellow officers during a police training exercise known within the cadet ranks as "fight for your life." Marquis lost that fight because his officer trainers used excessive force, which no one attempted to stop, and after causing him substantial and significant internal injuries that placed Marquis in medical distress, failed to get him medical help. Marquis died in the training room. He was declared dead two days later at the hospital.

This lawsuit was filed by Marquis's widow, Brittney, against the City of Arlington and the individual officers who were either directly involved in the use of force that killed Marquis, or who stood idly by while their fellow officers used excessive force and did nothing to stop it, and all of whom were deliberately indifferent to what became a very apparent medical emergency and failed to get him the medical help that he needed.[1] The district court dismissed those claims following the Appellees' Rule 12(b)(6) motions,

---

[1] Kennedy also sued Gracie University, a California-based private company that provides online and in-person training to law enforcement officers and cadets. ROA.510-511. After the claims against the officers and the City were dismissed, Kennedy settled her claims against Gracie, who is not a party to this appeal. ROA.946-949.

concluding that Kennedy did not adequately plead a constitutional violation against them because there was no intentional seizure of Kennedy given that the cadet training was a "voluntary, workplace activity [that] does not implicate the Fourth or Fourteenth Amendments" and, otherwise, Kennedy failed to allege an intent to harm on the part of the training officers. ROA.861-864.   As to the denial of medical care, the Magistrate Judge concluded that because Kennedy was not a pre-trial detainee, he was not entitled to medical care.  ROA.865-866.  Absent a constitutional violation, the Magistrate Judge naturally recommended that all other claims—bystander/supervisor liability against the other individual officers and *Monell* liability against the City—be dismissed.  ROA.866-867.

The district court agreed with the Magistrate Judge, overruling Kennedy's objections and adopting the Magistrate Judge's opinion without further opinion.  ROA.924-925.  This Court should reverse that dismissal and remand this case for further proceedings.

## Jurisdictional Statement

This case, which centers on the death of Marquis Kennedy during the City of Arlington's officer training program, was brought pursuant to 42 U.S.C. § 1983. ROA.484. Accordingly, the District Court had federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 because the District Court's Order Accepting Findings, Conclusions, and Recommendation of the United States Magistrate Judge on January 2, 2025, (ROA.924) and Agreed Judgment on January 21, 2025, (ROA.946) finally disposed of all claims against all parties.

Appellants timely noticed this appeal on February 3, 2025. Fed. R. App. P. 4; ROA.950.

## STATEMENT OF ISSUES PRESENTED ON APPEAL

<u>Issue No. 1</u>: Does the fact that the alleged constitutional violations occurred in the employment context, while engaged in a "fight for your life" police cadet training exercise, preclude constitutional violation claims of excessive force, bodily integrity, and denial of medical care?

<u>Issue No. 2</u>: Can a police cadet, engaged in a training exercise as part of his employment, nonetheless be "seized" by his police officer trainers for purposes of alleging Fourth and Fourteenth Amendment violations?

<u>STATEMENT OF THE CASE</u>

**I.    Marquis Kennedy, a cadet in training to join the Arlington Police Department ("APD"), is killed by his trainers during a "fight for your life" training simulation.**

Marquis Kennedy initially passed a pre-employment physical exam in May 2022. ROA.490. A few months later, during week 10 of the APD's 16-week training course, Marquis was required to participate in "fight for your life" training that was only for cadets aged 35 or older. ROA.490-91. This training was unpublished, not part of the standard protocol, and conducted after hours. ROA.491.

The "fight for your life" training protocol is an unofficial requirement for the older cadets, and cadets who did not or could not complete the simulations consecutively were forced out of the Academy. ROA.492. Favored cadets easily coasted through the simulations, but disfavored cadets were subjected to ferocious physical attacks by the instructors. ROA.492. In essence, it was a hazing ritual for cadets.

The schedule for the week of September 19-22, 2022, required the cadets, including Marquis, to train in the "fight for your life" simulation, scheduled for Friday, September 23, 2022.  On Monday and Tuesday, Corporal Jastin Williams supervised cadet wrestling sessions among the

cadets themselves.  ROA.491.  On Monday, there were two sessions totaling seven hours.  *Id.*  On Tuesday, the session lasted for four hours.  *Id.*  After a break from physical training on Wednesday, training resumed on Thursday at which point Marquis Kennedy complained to one of the trainers about being injured and was unable to remain upright and alert during classes. ROA.491.  Despite his complaints and objective signs of fatigue, Marquis was subjected to the "5:00 club," which required more after-hours, rigorous physical activity, an unpublished activity that would occur when cadets fell asleep during class.  ROA.491.

By the end of the training on Thursday, September 22, each member of the training staff were aware of the poor physical condition of Marquis and his injuries.  ROA.491.  Despite this knowledge, the training officers subjected him to yet another day of "fight for your life" training on Friday. ROA.491. That day, Marquis was subjected to jiu-jitsu combat training which included being placed in submission holds, choke holds, compression holds, punches and wrestling, and being *continuously* attacked for 15-16 minutes by four trained, hydrated, and rested instructors wearing protective gear. ROA.491.

During this training, Marquis was denied water despite requesting it. ROA.491. He was not permitted any breaks, was put into positions which denied him air, carried the full weight of the trainers on his chest, was repeatedly punched, and it was made clear to him if he failed to continue, he would fail and must repeat the entire physical training program. ROA.491-92. Despite repeated complaints of lightheadedness, thirst, fatigue and his obviously increasingly poor health, Marquis's requests for care were denied. ROA.492.

The "fight for your life" training consisted of four separate simulations.  ROA.492-93.  The first was led by Corporal Jastin Williams, a large, fit, experienced officer certified as a Survival Tactics Level 2 certified instructor by Gracie. ROA.492.  For the simulation, Williams—wearing Mixed Martial Arts gloves and a mouthguard—began the simulation in a mounted position, on top of Marquis, who was laying on his back on the mat.  ROA.492.  Williams had all his body weight on Marquis's torso and can be seen on video punching Marquis in the face and body.  ROA.492-493. The training simulation and Academy policy prohibits the Cadets from punching back and requires that they can only attempt to roll the opponent off their body using their hips.  ROA.493.  During this simulation, Williams

struck Marquis in the hips and abdomen and deprived Marquis of air with his full weight on Marquis's abdomen. ROA.493. Marquis could not breathe, was not allowed to fight back, and was unable to roll Williams off of his body. ROA.493. This "simulation" lasted approximately 3 minutes and 38 seconds with no break, at which time the second simulation began. ROA.493.

The second "fight for your life" simulation was performed by officer Jonathan Bucek, a certified Survival Tactics Level I Instructor. ROA.493. Bucek knew Marquis was already exhausted and injured as he was able to observe Officer Williams wrestling with Marquis during the first simulation. ROA.493. Officer Bucek, who had at least 15 minutes of rest since the last Cadet came through his station, began the simulation with a choking armbar across Marquis's neck while laying on him with his full body weight. ROA.493. As with the first simulation, Marquis was not allowed to punch back but was only allowed to use his hips to roll Officer Bucek off of his body. ROA.493. During this simulation, Officer Bucek struck Marquis in the hips and abdomen and deprived him of air both by compressing his chest and by putting an arm across his neck. ROA.493. During this simulation, Marquis can be heard groaning in agony. ROA.493. The simulation lasted

approximately 4 minutes, without any breaks, at which point Marquis immediately moved on to the third simulation.[2]  ROA.493.

The third simulation was led by David Kurbinsky, another certified, survival tactics, Level I instructor.  ROA.493.  Kurbinsky observed the first two simulations involving Marquis, witnessed Marquis bent over, groaning, and asking for water.  ROA.493.  Kurbinsky was fully rested when the third simulation began.  ROA.493.

The third simulation started similarly with Marquis on his back on the mat with Kurbinsky on top of him, crushing his torso and restricting his ability to breathe.  ROA.493.  Marquis was visibly exhausted and unable to recall the techniques he had been trained on.  ROA.493.  Kurbinsky had to tell Marquis which techniques to use while Kurbinsky was on top of him.  ROA.493.  Marquis was still unable to perform them.  ROA.493.  This

---

[2] At the end of this second simulation, Officer Williams and Academy Policy Coordinator, Corporal Shelly Bateman, both admitted that Marquis appeared very tired but neither did anything to stop the simulations, offer Marquis water, or even ask Marquis if he was okay, even as Marquis is bent over, panting, and asking for water.  ROA.493. Rather, both ordered him to keep going.  ROA.493.

simulation lasted approximately 4 minutes, with no break.[3]  ROA.493.  When the third simulation ended, Marquis staggered to the wall, until the fourth simulation began.  ROA.493.

The final "fight for your life" simulation was conducted by Officer Bradley McNulty, another certified trainer who was fully rested and who knew Marquis was injured and severely fatigued.  ROA.494.  McNulty had just observed three previous instructors wrestling with and assaulting Marquis.  ROA.494.  McNulty, wearing boxing gloves and headgear, a mouth guard and chest protection, began the fourth simulation by repeatedly punching Marquis in the head. ROA.494.  During the final simulation, Academy policy allows Cadets to now "fight for their life" and punch back at the instructor.  ROA.494.  By this time, however, Marquis was nearly unconscious.  ROA.494.

In fact, when the simulation began, Marquis had to be prompted to engage.  ROA.494.  Marquis, however, after being punched in the head twice, dropped his "officer in distress" card, signaling that he wanted and

---

[3] Officer Williams commented during the third simulation that Marquis appeared tired. ROA.493.  Other fighting instructors or evaluators, however, speculated that Marquis was faking injury and told Marquis to continue.  ROA.493.

needed out of the simulation. ROA.494. Another instructor, however, pushed the card away with his foot, at which time Marquis was punched in the head approximately 10 more times by McNulty. ROA.494. After approximately 25 seconds, when it was clear Marquis is unable to continue, the simulation was finally stopped. ROA.494.

Another officer, Patrick Knight, asked Marquis if he needed an ambulance and Marquis said he did. ROA.494. At this point, Marquis could not stand or walk on his own. ROA.494. Two people were needed to carry Marquis out of the room (and out of view of any of the video cameras). ROA.494.

Marquis was taken to a nearby break room and placed on a chair. ROA.494. No ambulance was immediately called, and despite his clear medical distress, Marquis was left on his own in the break room. ROA.494. Marquis stopped breathing, lost consciousness, and fell off the chair, landing on his head. ROA.494. He did not receive any first aid for over 5 minutes after that, and as a result, was without oxygen for that time. ROA.494.

At 10:24 a.m., Corporal Shelly Bateman finally calls EMS, but significantly downplays Marquis's condition, describing him simply as "a little overheated." ROA.494. A few minutes later, however, Officer Bateman

called dispatch again, this time stating that Marquis was not breathing and that they had started CPR and were attempting to use a defibrillator to revive him. ROA.495. At 10:36 a.m., about ten minutes after the second call, another officer calls dispatch to verify that EMS will be "waved" at the gate and to request an update for when EMS may arrive.  ROA.495.

Twelve minutes after initially requested, the EMTs arrived and observed that Marquis was suffering from respiratory failure. ROA.495. Marquis survived for 48 more hours until he passed away on September 25, 2022. ROA.497.

## II.    Marquis's widow, Brittney, sues the training officers and the City of Arlington.

Marquis's widow, Brittney Kennedy, filed suit against the Instructor Officers and the City of Arlington, alleging constitutional violations under Section 1983 and under *Monell*. ROA.484. Specifically, Kennedy alleged claims against the four officers directly involved with the "fight for your life" simulations—Officers Williams, Bucek, Kurbinsky, and McNulty—for violating Marquis's Fourth Amendment right to be free from excessive force and his Fourteenth Amendment right to bodily integrity.  ROA.499-501.  The other, individual officers—Shelly Bateman, Richard Coleman, Tyler Ferrell,

Patrick Knight, Michael Leonesio, Leonard Ray, Ronnie McCoy, Bobby Mugueza, Officer Norwood, Connor Shanahan, and Sean Wheatly—are officers who were present during the training but who did not directly participate in the fight simulation. These officers were sued as bystanders or supervisors who failed to intervene to prevent the constitutional violations committed by Williams, Bucek, Kurbinsky, and McNulty. ROA.501-503. Finally, all of the individual officers were sued for violating Marquis's Fourteenth Amendment right not to have his serious medical needs met with deliberate indifference. ROA.503-505. Kennedy also sued the City of Arlington for failing to train its officers (1) as to the use of excessive force in the cadet training and (2) to recognize medical distress in its cadets during and after that training.[4] ROA.505-510.

## III.  The District Court Dismisses Kennedy's Claims.

Both the City and the Officers filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The Officers focused mainly on the fact that this incident occurred in the context of a voluntary, workplace

---

[4] Kennedy also sued Gracia University, the organization that trained and certified the City's officers regarding the "fight for your life" training, for negligence and gross negligence. ROA.510-511. After the claims against the officers and the City were dismissed, Kennedy settled with Gracie. ROA.496.

activity and, as such, argued that such activity does not implicate the Fourth or Fourteenth Amendments.  ROA.779.  Similarly, the Officers argued that, even if there were a constitutional violation alleged, there was no clearly established law that prohibited such conduct in this context.  ROA.779.

The City also moved for dismissal, similarly claiming that Kennedy had not adequately alleged a constitutional violation.  ROA.629.  The City also argued that there was no seizure, and thus no Fourth or Fourteenth Amendment violation, because the encounter was consensual.  ROA.640-641.

The Magistrate Judge recommended that both motions be granted. ROA.851-868. Kennedy objected to that recommendation, ROA.875-892, but the district court overruled those objections and adopted the Magistrate Judge's findings, conclusions, and recommendation.  ROA.924-925. Kennedy timely noticed her appeal.  ROA.951-952.

## SUMMARY OF THE ARGUMENT

This is not a case involving a claim that the City of Arlington and its police officers failed to provide Marquis Kennedy, a cadet trainee, a safe workplace.  This is a case in which that workplace—particularly, the Arlington Police Department's "fight for your life" training simulation—went beyond official training protocols and was regarded as a City-sanctioned hazing ritual for "older" cadets like Marquis.  Not surprisingly, that hazing-ritual quickly morphed into a series of constitutional violations.

The individual officer-trainers knew that Marquis was fatigued and injured and wanted the training simulation to stop, but they would not let it.  When that happened, the officers intentionally seized Marquis, and when those same officers continued to use unnecessary force on a seized individual who was unable to fight back, those officers violated his Fourth Amendment rights, just like they would have if Marquis had been a civilian.  And, because Marquis had, at that point, been intentionally seized and beaten by his fellow officers, when he exhibited severe medical distress, those officers had an obligation to provide Marquis with medical care.  Kennedy's pleadings were sufficient to state valid constitution violations.

The Magistrate Judge and District Court were wrong to dismiss those claims. This Court should therefore reverse that order and remand those claims to the District Court.

<u>ARGUMENT AND AUTHORITIES</u>

## I.    Standard of review

The district court's grant of a motion to dismiss under Rule 12(b)(6) is reviewed de novo. *Santander v. Salazar,* 133 F.4th 471, 477 (5th Cir. 2025).

## II.   Kennedy's pleading burden.

The pleading stage is not the point at which Plaintiff must establish the level of proof necessary to ultimately prevail. *See Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977). Indeed, a "strong framework of policy considerations . . . militate[s] against granting motions to dismiss for failure to state a claim[.]" *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). Thus, in the Fifth Circuit, motions to dismiss under Rule 12(b)(6) "are viewed with disfavor and are rarely granted." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 231 (5th Cir. 2009) (quoting *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005)); *see also Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011).

To survive a motion to dismiss, all that is required is the complaint contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Santander,* 133 F.4th at 477 (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 696 (2009)). Two primary principles guide the plausibility

analysis. *Iqbal*, 556 U.S. at 678–79. First, the court must "liberally construe the complaint in favor of the plaintiff[.]" *Id.* Second, the court must "accept all well-pleaded factual allegations as true." *Id.*; *see also Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007).

Courts do not evaluate the merits of the allegation but only consider whether a plaintiff has adequately pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Thus, a pleading simply needs to provide "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements." *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (internal quotation omitted). A plaintiff's well-pleading factual allegations enjoy a presumption of truth. *Santander,* 133 F.4th at 477.

An assertion of qualified immunity does not change this standard. *Id.* at 478 ("an assertion of qualified immunity … does not subject the complaint to a heightened pleading standard.") (quoting *Arnold v. Williams,* 979 F.3d 262, 267 (5th Cir. 2020)). "When confronted with a qualified-immunity defense at the pleadings stage, the plaintiff must plead *facts* which, if proved, would defeat the claim of immunity. And the district court must do no more than determine whether the plaintiff has 'file[d] a short and plain statement

of his complaint, a statement that rests on more than conclusions alone." *Id.* (internal citations omitted). Thus, a qualified immunity defense does not require that the plaintiff's original complaint exceed the pleading standard of Rule 8 of the Federal Rules of Civil Procedure. *Id.* Instead, in ruling upon the qualified immunity issue, the Court considers the threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 421 (5th Cir. 2006).

## II.  Kennedy alleged willful, intentional conduct or conduct that rises to the level of deliberate indifference.

### A.  Willful or intentional conduct does not necessarily mean an intent to injure.

According to the Magistrate Judge, Kennedy's pleading was deficient because it did not allege that Marquis's death was "'willfully' caused by the Individual Officer Defendant Willams, Bucek, Kurbinsky, or McNulty." ROA.861.[5]   But, the Magistrate Judge's recommendation improperly conflates willful, intentional conduct with an intent to injure.

---

[5] The Magistrate Judge noted a similar deficiency with the seizure requirement, addressed later in this brief, criticizing Kennedy's complaint for not "sufficiently allege[ing] facts to show that the above-listed Individual Officer Defendants *intended* to seize Marquis Kennedy…" ROA.861 (emphasis in original).

The law does not require that the individual officers intended to kill or harm Marquis Kennedy, only that they intended to commit the acts that resulted in the harm. *Salas v. Carpenter,* 980 F.2d 299, 307 (5th Cir. 1992) ("a procedural or substantive due process violation could occur if a state official causes injury by *arbitrarily* abusing governmental power."); *Kinney v. Weaver*, 367 F.3d 337, 373-74 (5th Cir. 2004) (holding that intent is a fact issue generally not appropriate for summary judgment on qualified immunity).

Kennedy alleged that the Officers used excessive, deadly force and were deliberately indifferent to Marquis's serious medical needs, in violation of Marquis's Fourth Amendment or Fourteenth Amendment rights. ROA.499-505. The fact that these violations took place in the employment context does not change the nature of the violations. Rather, the Supreme Court holds that "[t]he First Amendment, the Equal Protection and Due Process Clauses of the Fourteenth Amendment, and other provisions of the Federal Constitution afford protection to employees who serve the government as well as to those who are served by them, and § 1983 provides a cause of action for all citizens injured by an abridgment of those protections." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 119–20 (1992).

Unquestionably, Marquis was the *intended* victim of the use of force –

the Officers meant to apply the force used to him, not someone else. And, they intended to apply the level of force that they actually used. This is not a situation where force was accidentally applied or applied unintentionally to a bystander, particularly based on the face of Kennedy's pleadings. There can be no real debate here that, factually, Kennedy alleged that the officers intended to use the force that they actually did use, and that they applied it to the person to whom they intended to apply force. The fact that the consequences of that force were far more devastating or tragic than the Officers presumably expected or wanted does not make the force unintentional.

These actions were not accidents; they were orchestrated and intentional assaults. The training simulation was titled "fight for your life." The idea that this was a training *simulation* suggests that the instructors intended to put Marquis in fear of imminent harm. When Marquis consented to a training simulation, he was expecting ***simulated*** harms. It is reasonable to infer that Marquis had a reasonable expectation that he would be able to stop the simulation or take a break for medical or health reasons. After all, he was provided an "officer in distress" card that he tried to use to stop the exercise.  ROA.494.  But that is obviously not what happened.

### B. The training officers were also deliberately indifferent to Marquis's right to be free from excessive force and to bodily integrity.

The Magistrate Judge also concluded that Kennedy failed to allege "any non-conclusory facts that indicate Williams, Bucek, Kurbinsky, and McNulty consciously disregarded a known and excessive risk to Marquis Kennedy's health and safety that was beyond negligence or gross negligence." ROA.865. But, deliberate indifference was shown here.

As the Magistrate Judge acknowledged, "deliberate indifference" requires culpability beyond gross negligence—i.e., a conscious disregard of a known and excessive risk to the victim's health and safety. ROA.863 (citing *Sterling v. City of Jackson, Miss.*, 715 F. Supp. 3d 918, 929 (S.D. Miss. 2024)). Kennedy alleges that degree of conduct as well.

Kennedy alleges throughout her complaint that the officers knew that Marquis was injured and fatigued and still took no measures to help him. During the second simulation, both Officer Williams and the Academy Policy Coordinator, Shelly Bateman, recognized that Marquis was extremely fatigued, but refused to stop the simulation, offer water, or even ask Marquis if he was ok. ROA.493. At the beginning of the fourth and final simulation, Marquis dropped his "Officer in Distress" card, which was supposed to stop

the training exercise, but the officers refused to do so. ROA.494.  In fact, after Marquis dropped his card, one of the training officers simply pushed it away and Marquis was punched in the head approximately 10 more times. ROA.494.

At some point in the training exercise, Marquis reasonably perceived the **real harms,** was exhausted, and communicated those **real harms**— asking for water and a break in front of all the other officers. ROA.493. Bateman, Williams and Bucek refused him the opportunity to leave, receive water, or take a break. ROA.493. Instead, all three continued, and in fact **escalated,** the assault. ROA.493. Marquis's distress was ignored by his superiors as he was struggling to breathe, needed water, and was physically exhausted. Continued use of force at this stage, knowing what these officers knew about Marquis's condition, is deliberate indifference.

The conduct Kennedy alleges here goes far beyond a simple failure to provide a safe workplace, as the officers contend.  Here, the City and its Officers *willfully disregarded* a known and excessive risk to Marquis's health and safety by depriving him of air, water, breaks, and medical attention. This "fight for your life" simulation went beyond basic workplace training, escalating quickly into intentional and deadly assault. This was a

hazing ritual, not a valid or necessary training exercise. As such, even viewed in the context of the employer/employee relationship, this conduct is conduct that shocks the conscience and meets the deliberate indifference standard.

Kennedy alleged that the City and the Officers knew that the "fight for your life" training had a history of injuring trainees, and the City had received numerous complaints about use of force. ROA.506. The City also had no training to recognize when cadets were in medical distress. Participation in the training was a requirement of employment. ROA.507-510. It "shocks the conscience" at a constitutional level when officers (1) use force-based training against trainees or cadets when those exercises have been known to cause harm, (2) deny basic care needs such as water and breaks, and (3) continue an exercise when it is clear that a cadet is in medical distress. As such, Kennedy's complaint was sufficient to state a valid constitutional violation.

## C.    There is clearly established law that what the officers did violated the Constitution.

Although the Magistrate Judge never reached the "clearly established law" prong of the officers' qualified immunity defense, Kennedy adequately

asserted violations of clearly established law.  ROA.500-505.   The Officers will attempt to argue, however, that "[t]he law is not clearly established that a cadet being injured during a flight-simulation exercise constitutes a constitutional violation—even where the injury results in death."  ROA.793-94.  But, the constitutional violation is not "a cadet being injured during a fight-simulation exercise."  Rather, the issue here is whether some of the Officers used excessive, deadly force and whether some of the Officers were deliberately indifferent to Marquis's serious medical needs, in violation of Marquis's Fourth Amendment or Fourteenth Amendment rights.  ROA.499-505.

It is true that there is no constitutional right to a safe workplace.  *See Collins,* 503 U.S. at 125-26 (rejecting, as a constitutional violation, claim that city violated constitutional rights by failing to provide a reasonably safe work environment).  But, that is not the basis of Kennedy's constitutional violation claim.  Rather, Kennedy alleges that the individual officers violated Marquis's right to be protected from the use of excessive force, the right to bodily integrity, and the right to be provided medical care.  It is undisputed that the Officers would not be allowed to attack or punch a stranger on the street without reason. In that same vein, they cannot attack or punch a

coworker, deny him medical care, and then claim that the "workplace environment" somehow shields their conduct.

The fact that these constitutional violations took place in the context of the employer-employee relationship does not control the analysis. "The First Amendment, the Equal Protection and Due Process Clauses of the Fourteenth Amendment, and other provisions of the Federal Constitution afford protection to employees who serve the government as well as those who are served by them, and § 1983 provides a cause of action for *all citizens* injured by the abridgment of those protections." *Id.* at 119-20 (emphasis added). Even in the workplace, federal jurisprudence sets the "ground rules" for claims of excessive force, bodily integrity, and the denial of medical care:

> [T]he Due Process Clause of its own force requires that conditions of confinement satisfy certain minimal standards for pretrial detainees, *see Bell v. Wolfish,* 441 U.S. 520, 535, n. 16, 545, 99 S.Ct. 1861, 1872, n. 16, 1877, 60 L.Ed.2d 447 (1979), for persons in mental institutions, *Youngberg v. Romeo,* 457 U.S. 307, 315–316, 102 S.Ct. 2452, 2457–2458, 73 L.Ed.2d 28 (1982), for convicted felons, *Turner v. Safley,* 482 U.S. 78, 94–99, 107 S.Ct. 2254, 2265–2267, 96 L.Ed.2d 64 (1987), and for persons under arrest, *see Revere v. Massachusetts General Hospital,* 463 U.S. 239, 244–245, 103 S.Ct. 2979, 2983–2984, 77 L.Ed.2d 605 (1983). The "process" that the Constitution guarantees in connection with any deprivation of liberty thus includes a continuing obligation to satisfy certain minimal custodial standards.

*Id.* at 127–28.

Those protections seem vitally important here in the context of a police department training its own officers on the use of force. Certainly, in other contexts, courts note the danger of "inject[ing] federal authority into public school playground incidents, football (or even ballet) practice sessions, and class field trips, not to mention training sessions for government jobs that require some degree of physical fitness." *See Waybright v. Federick Cnty, MD*, 528 F.3d 199, 208 (4th Cir. 2008). But, those contexts are not implicated here. In this context, federal jurisprudence already sets "ground rules" for claims of excessive force, bodily integrity, and the denial of medical care.

Just because an officer is training an inexperienced cadet regarding the use of force does not give that officer the authority to use any level of force he or she desires, unbridled by any constitutional restrictions. If the officers' conduct during training would violate the constitutional protections afforded a criminal suspect or arrestee, it should afford Marquis that same protection. And Kennedy identified clearly established law as to each of these constitutional violations that would have given each officer fair warning that what they were doing (or not doing) violated Marquis's constitutional rights. ROA.499-505.

III.    **Kennedy alleged sufficient facts showing a seizure under the Fourth and Fourteenth Amendments.**

The Magistrate Judge also concluded that Marquis was never seized and, as such, the officers had no constitutional duty to provide Marquis any medical care.  ROA.865-866.  This conclusion stems from the City's and the Officers' claim that Marquis's participation in the training exercise was consensual.  ROA.640; ROA.795. But just because an encounter begins as a consensual one does not mean it cannot become nonconsensual and implicate the Fourth or Fourteenth Amendment.  *See Terry v. Ohio,* 392 U.S. 1, 16 (1968).  Under Section 1983, a seizure arises anytime a person's ability to leave is limited, however brief.  *Vardeman v. City of Houston,* 55 F.4th 1045, 1052 (5th Cir. 2022)  Contrary to the Officers' claim, Marquis's encounter with his trainers did not continue to remain "consensual" nor was Marquis "free to leave."

During the "fight for your life" training simulation, Marquis was denied water despite requesting it.  ROA.493.  He was not permitted any breaks, was put into positions which denied him air, carried the full weight of the trainers on his chest, was repeatedly punched, and it was made clear to him if he failed to continue, he would fail and must repeat the entire

28

physical training program. ROA.491-492. Despite his repeated complaints of lightheadedness, thirst, fatigue and his obviously increasingly poor health, his requests for care were met with instructor denials for a sustained period. ROA.491-492. Marquis dropped his card during the exercise, which was supposed to constitute a request to stop. ROA.494. Moreover, the Officers could observe his exhausted state and the fact that he was physically incapable of participating in the exercise any longer. ROA.493-494. By the end of fourth and final simulation, Marquis was fully incapacitated, and hence involuntarily committed to the custody of the police instructors. ROA.494. This training ultimately rendered Marquis unconscious, making it impossible for him to leave. To label this encounter as consensual is to simply deny reality and Kennedy's actual pleadings.

Kennedy has sufficiently pled, and the video does not contradict, the fact that Marquis was not freely able to leave the training exercise and ultimately could not leave because of the dire medical condition in which the Officers' use of force placed him. Such actions are enough to constitute a seizure under the Fourth Amendment. *See Vardeman*, 55 F.4th at 1050–51 ("Examples of such a seizure include the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the

person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled."); *DeShaney v. Winnebago Cnty. Dep't of Soc. Services*, 489 U.S. 189, 200 (1989) ("the protections of the Due Process Clause, both substantive and procedural, may be triggered when the State, by the affirmative acts of its agents, subjects an involuntarily confined individual to deprivations of liberty which are not among those generally authorized by his confinement.").

## IV. Once Marquis was seized, he was constitutionally entitled to not be denied medical care.

Because Marquis was seized by the officers during the "fight for your life" training exercise, he also enjoyed a constitutional right to medical care during that seizure, which was violated by the officers. *See Nerren v. Livingston Police Dep't,* 86 F.3d 469, 472-73 (5th Cir. 1996) (holding that arrestees are a "subset of pretrial detainees"); *see also Allen v. Hays,* 65 F.4th 736, 747 (5th Cir. 2023) (describing constitutional right to medical care under the Fourteenth Amendment).

> [W]hen the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.,* food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process

Clause. The affirmative duty to protect arises … from the limitation which it has imposed on his freedom to act on his own behalf. In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the "deprivation of liberty" triggering the protections of the Due Process Clause[.]

*DeShaney v. Winnebago Cnty. Dep't of Soc. Services*, 489 U.S. 189, 200 (1989)

(discussing the application of the Fourteenth Amendment due process

clause to individuals detained or held by the state).

It is disingenuous to contend that Marquis was not seized when the

officers actions so incapacitated Marquis that he lost consciousness. And yet

even at that point, they denied him medical care to the point that he was

deprived of oxygen for more than five minutes, with the expected deadly

consequences.

## CONCLUSION AND PRAYER

Because Kennedy has properly pled constitutional violations, she has

also properly pled a basis for section 1983 liability against the City and the

individual officers. As such, the district court erred in dismissing her claims.

For these reasons, Kennedy respectfully requests that this Court reverse the

district court's order granting the Officers' and the City's motions to dismiss

and remand all of these claims back to the district court for further proceedings including trial on the merits.

Respectfully submitted,

By: */s/ Shelby J. White*

**Shelby J. White**
State Bar No. 24084086
swhite@dpslawgroup.com
**Thad D. Spalding**
State Bar No. 00791708
tspalding@dpslawgroup.com
**Durham, Pittard & Spalding, LLP**
P.O. Box 224626
Dallas, Texas 75222
Telephone: (214) 946-8000
Facsimile: (214) 946-8433

and

**Roland Witherspoon**
State Bar No. 24086097
litigation@withlaw.com
**Witherspoon Law**
7290 Crosswater Ave.
Tyler, Texas 75703
Telephone: (903) 597-2500
Facsimile: (866) 269-3770

**COUNSEL FOR APPELLANT**

### CERTIFICATE OF COMPLIANCE

1.  This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 5th CIR. R. 32.1:

    **X**      this document contains 5,957 words.

    _        this brief uses a monospaced typeface and contains _____ lines of text.

2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

    **X**      this document has been prepared in a proportionally spaced typeface using **Microsoft Word 2010 in 14 point, Book Antiqua font**, or

    _        this brief has been prepared in a monospaced typeface using [state name and version of word processing program] with [state number of characters per inch and name of type style].

    */s/ Shelby J. White*
    **Shelby J. White**
    Attorney of record for Appellant
    Date: June 27, 2025

**CERTIFICATE OF SERVICE**

I hereby certify that on this June 27, 2025 a true and correct copy of this document was served upon the following counsel of record via electronic filing pursuant to the Federal Rules of Appellate Procedure:

Cynthia Withers
cynthia.withers@arlingtontx.gov
Joshua A. Skinner
joshua.skinner@arlingtontx.gov
Benjamin J. Gibbs
benjamin.gibbs@arlingtontx.gov
Alexander J. Lindvall
Alexander.lindvall@arlingtontx.gov
CITY OF ARLINGTON
CITY ATTORNEY'S OFFICE
P.O. Box 90231, MS 63-0300
Arlington, Texas 76004-3231
*Attorneys for City of Arlington, Texas*

Thomas P. Brandt
tbrandt@fhmbk.com
Christopher D. Livingston
clivingston@fhmbk.com
FANNING HARPER MARTINSON BRANDT
& KUTCHIN, PC
A Professional Corporation
One Glen Lakes
8140 Walnut Hill Lane, Suite 200
Dallas, Texas 75231
*Attorneys For Officers*

*/s/ Shelby J. White*
**Shelby J. White**

4