Case No. 25-10259

# In the United States Court of Appeals
# for the Fifth Circuit

BRITTNEY KENNEDY, INDIVIDUALLY AND AS SURVIVING SPOUSE, ON BEHALF OF MINOR M.S.K. AND AS ANTICIPATED PERSONAL REPRESENTATIVE OF THE ESTATE OF MARQUIS KENNEDY,

*Plaintiff-Appellant,*

v.

CITY OF ARLINGTON, TEXAS; SHELLY BATEMAN; JONATHAN P. BUCEK; RICHARD COLEMAN; TYLER FERRELL; PATRICK KNIGHT; DAVID KURBINSKY; MICHAEL LEONESIO; LEONARD RAY; RONNIE MCCOY; BOBBY MUGUEZA; OFFICER NORWOOD; CONNOR SHANAHAN; SEAN WHEATLEY; JASTIN D. WILLIAMS; BRADLEY MCNULTY,

*Defendants-Appellees.*

On Appeal from the United States District Court
For the Northern District of Texas
Civil Action No. 4:24-CV-00208-P

## BRIEF OF THE DEFENDANTS-APPELLEES INDIVIDUAL OFFICERS

THOMAS P. BRANDT
State Bar No.02883500
tbrandt@thompsoncoe.com
CHRISTOPHER D. LIVINGSTON
State Bar No. 24007559
clivingston@thompsoncoe.com

THOMPSON, COE, COUSINS & IRONS, L.L.P.
Plaza of the Americas, 700 N. Pearl Street
Twenty-Fifth Floor
Dallas, Texas 75201-2832
214-871-8200 (telephone)
214-871-8209  (telecopier)

Counsel for Defendants-Appellees
Individual Officers

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

| **Plaintiff-Appellant:** | **Counsel** |
|---|---|
| Brittney Kennedy, Individually and as Surviving Spouse, on Behalf of Minor M.S.K. and as Anticipated Personal Representative of The Estate of Marquis Kennedy | Thad D. Spalding<br>Shelby J. White<br>Durham, Pittard & Spalding, LLP<br>P.O. Box 224626<br>Dallas, Texas 75222 |

| **Defendants-Appellees:** | **Counsel** |
|---|---|
| Shelly Bateman, Jonathan P. Bucek, Richard Coleman, Tyler Ferrell, Patrick Knight, David Kurbinsky, Michael Leonesio, Leonard Ray, Ronnie McCoy, Bobby Mugueza, Officer Norwood, Connor Shanahan, Sean Wheatly, Jastin D. Williams, and Bradley McNulty | Thomas P. Brandt<br>Christopher D. Livingston |

| **Defendant-Appellee:** | **Counsel** |
|---|---|
| City of Arlington, Texas | Joshua Alan Skinner<br>Cynthia Jane Withers<br>Alexander J. Lindvall<br>P.O. Box 90231<br>MS 63-0300<br>Arlington, TX 76004-3231 |

/s/ *Thomas P. Brandt*
**THOMAS P. BRANDT**
**Attorney of Record for**

**Defendants-Appellees**
**Shelly Bateman, Jonathan P. Bucek,**
**Richard Coleman, Tyler Ferrell, Patrick**
**Knight, David Kurbinsky, Michael**
**Leonesio, Leonard Ray, Ronnie McCoy,**
**Bobby Mugueza, Officer Norwood,**
**Connor Shanahan, Sean Wheatly, Jastin**
**D. Williams, and Bradley McNulty**

## STATEMENT REGARDING ORAL ARGUMENT

Appellees believe that oral argument is unnecessary since this case involves the application of well-established law without presenting a novel issue. However, if this Court is inclined to grant Appellant's request for oral argument, then Appellees wish to present oral argument as well.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS.................................................. ii

STATEMENT REGARDING ORAL ARGUMENT.......................................... iv

TABLE OF CONTENTS...................................................................v

ISSUES PRESENTED .....................................................................1

STATEMENT OF THE CASE ..............................................................2

SUMMARY OF THE ARGUMENT.........................................................6

ARGUMENTS AND AUTHORITIES .......................................................7

A.    The Standard for a Motion to Dismiss under Rule 12(b)(6). .........7

B.    Appellant's Burden to Overcome Qualified Immunity..................9

C.    The Video is Part of Appellant's Complaint. ..............................11

D.    This was a Consensual Encounter that Does not Implicate the Fourth Amendment...................................................................12

    1.    There was Never an Intent to "Seize" Cadet Kennedy. ......14

    2.    Cadet Kennedy Consented to the Contact..........................16

E.    Appellant's Claims that the Individual Officer Appellees Acted Intentionally Do Not Defeat the Individual Officer Appellees' Entitlement to Qualified Immunity. ...........................................17

F.    Appellant's Second Amended Complaint Fails to Make the Individualized Allegations Necessary to Overcome the Officers' Entitlement to Qualified Immunity. ...........................................20

G.    Appellant Fails to Establish the Elements of Bystander Liability. ...............22

H.    Appellant Cannot Avoid the Result Dictated by *Collins* Regarding the Fourteenth Amendment Claims...................................................24

I.    Appellant's Deliberate Indifference Argument is Conclusory and Contradicted by Her Factual Allegations. .....................................................26

CONCLUSION.................................................................................................27

CERTIFICATE OF SERVICE...........................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amstutz v. Harris County,*
  144 F.4th 773 (5th Cir. 2025) ................................................................22

*Anderson v. Creighton,*
  483 U.S. 635 (1987)................................................................10, 17

*Arnold v. Williams,*
  979 F.3d 262 (5th Cir. 2020) ..................................................................9

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)................................................................1, 8

*Backe v. LeBlanc,*
  691 F.3d 645 (5th Cir. 2012) ................................................................10, 23

*Barnes v. Felix,*
  605 U.S. --, 145 S. Ct. 1353 (2025) ..................................................18

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)................................................................1

*Blackburn v. City of Marshall,*
  42 F.3d 925 (5th Cir. 1995) ................................................................8

*Brosseau v. Haugen,*
  543 U.S. 194 (2004)................................................................17

*Brower v. County of Inyo,*
  489 U.S. 593 (1989)................................................................15

*Brumfield v. Hollins,*
  551 F.3d 322 (5th Cir. 2008) ................................................................10

*Carnaby v. City of Houston,*
  636 F.3d 183 (5th Cir. 2011) ................................................................12

*Carty v. Rodriguez,*
  470 Fed. App'x 234 (5th Cir. 2012) ..................................................19

*Causey v. Sewell Cadillac-Chevrolet, Inc.*,
394 F.3d 285 (5th Cir. 2004) ...............................................................11

*City of Watauga v. Gordon*,
434 S.W.3d 586 (Tex. 2014) ...............................................................17

*Collier v. Montgomery*,
569 F.3d 214 (5th Cir. 2009) .................................................................9

*Collins v. City of Harker Heights*,
503 U.S. 115 (1992)............................................................20, 24, 25, 26

*Collins v. City of Harker Heights*,
916 F.2d 284 (5th Cir. 1990) ...............................................................25

*Collins v. Morgan Stanley Dean Witter*,
224 F.3d 496 (5th Cir. 2000) .............................................12, 24, 25

*Cope v. Cogdill*,
3 F.4th 198 (5th Cir. 2021) ..................................................................20

*County of Los Angeles v. Mendez*,
581 U.S. 420 (2017)........................................................................14, 18

*County of Sacramento v. Lewis*,
523 U.S. 833 (1998)........................................................................12, 24

*District of Columbia v. Wesby*,
583 U.S. 48, 138 S.Ct. 577 (2018)......................................................10

*Doe v. Dallas Ind. Sch. Dist.*,
153 F.3d 211 (5th Cir. 1998) ...............................................................26

*Doe v. Taylor Ind. Sch. Dist.*,
15 F.3d 443 (5th Cir. 1994) .................................................................19

*Dudley v. Angel*,
209 F.3d 460 (5th Cir. 2000) .................................................................9

*Fee v. Herndon*,
900 F.2d 804 (5th Cir. 1990) .................................................................8

*Feirson v. District of Columbia,*
    506 F.3d 1063 (D.C. Cir. 2007) ..........................................................15

*Florida v. Bostick,*
    501 U.S. 429 (1991) ...........................................................................13

*Furr v. State,*
    499 S.W.3d 872 (Tex. Crim. App. 2016) ............................................13

*Gentilello v. Rege,*
    627 F.3d 540 (5th Cir. 2010) ................................................................8

*Gorman v. Sharp,*
    892 F.3d 172 (5th Cir. 2018) ........................................................15, 20

*Graham v. Connor,*
    490 U.S. (1989)...................................................................................18

*Hale v. Townley,*
    45 F.3d 914 (5th Cir. 1995) ................................................................23

*Harmon v. City of Arlington,*
    16 F.4th 1159 (5th Cir. 2021) .............................................................19

*In re Katrina Canal Breaches Litig.,*
    495 F.3d 191 (5th Cir. 2007) ..............................................................11

*Keane v. Fox TV Stations, Inc.,*
    297 F. Supp. 2d 921 (S.D. Tex. 2004) ..................................................8

*Lovick v. Ritemoney Ltd.,*
    378 F.3d 433 (5th Cir. 2004) ................................................................4

*McKay v. LaCroix,*
    117 F.4th 741 (5th Cir. 2024) ...............................................................7

*Meadours v. Ermel,*
    483 F.3d 417 (5th Cir. 2007) ..............................................................20

*Morrow v. Meachum,*
    917 F.3d 870 (5th Cir. 2019) ..........................................................9, 10

*Mullenix v. Luna*,
    577 U.S. 7 (2015) ................................................................9

*Norris v. Hearst Trust*,
    500 F.3d 454 (5th Cir. 2007) ...........................................11

*of Estate of Joseph v. Bartlett*,
    981 F.3d 319 (5th Cir. 2020) ...........................................23

*Papasan v. Allain*,
    478 U.S. 265 (1986) ...........................................................8

*Pearson v. Callahan*,
    555 U.S. 223 (2009) .....................................................10, 12

*Petrobras Am., Inc. v. Samsung Heavy Indus. Co. Ltd.*,
    9 F.4th 247 (5th Cir. 2021) ................................................7

*Estate of Phillips v. District of Columbia*,
    455 F.3d 397 (D.C. Cir. 2006) .........................................18

*Pierce v. Smith*,
    117 F.3d 866 (5th Cir. 1997) .............................................9

*Poole v. City of Shreveport*,
    691 F.3d 624 (5th Cir. 2012) ...........................................21

*R2 Inves. LDC v. Phillips*,
    401 F.3d 638 (5th Cir. 2005) ...........................................11

*Rich v. Palko*,
    920 F.3d 288 (5th Cir. 2019) .......................................9, 11

*Saucier v. Katz*,
    533 U.S. 194 (2001) .....................................................12, 13

*Scott v. Harris*,
    550 U.S. 372 (2007) .........................................................10

*Shefeik v. Busby*,
    836 F. App'x 315 (5th Cir. 2021) ....................................21

*Slaughter v. Mayor and City Council of Baltimore*,
    682 F.3d 317 (4th Cir. 2012) .................................................................18

*State v. Woodard*,
    341 S.W.3d 404 (Tex. Crim. App. 2011) ...........................................13

*Stewart v. City of Middletown*,
    136 Fed. App'x 881 (6th Cir. 2015) ...................................................15

*Stewart v. Murphy*,
    174 F.3d 530 (5th Cir. 1999) ..............................................................20

*Tennessee v. Garner*,
    471 U.S. 1 (1985)................................................................................18

*Thompson v. Clark*,
    596 U.S. 36 (2022)..............................................................................16

*Torres v. Madrid*,
    592 U.S. 306 (2021)............................................................................15

*Tuchman v. DSC Comms. Corp.*,
    14 F.3d 1061 (5th Cir. 1994) ................................................................8

*Turner v. Lieutenant Driver*,
    848 F.3d. 678 (5th Cir. 2017) .............................................................11

*Villarreal v. Wells Fargo Bank, N.A.*,
    814 F.3d 763 (5th Cir. 2016) ................................................................8

*Vincent v. City of Sulphur*,
    805 F.3d 543 (5th Cir. 2015) ..............................................................11

*Wade v. State*,
    422 S.W.3d 661 (Tex. Crim. App. 2013) ...........................................13

*Whitley v. Hannah*,
    726 F.3d 631 (5th Cir. 2013) ..............................................................23

**STATUTES**

42 U.S.C. § 1983 .....................................................................1, 9, 16, 20

**OTHER AUTHORITIES**

Fourth Amendment ...............................................................................*passim*

Fourteenth Amendment ..........................................................................1, 7, 24, 25

Restatement (Second) of Torts § 19 (1965)...........................................................16

## ISSUES PRESENTED

This appeal involves claims brought under 42 U.S.C. § 1983 against a group of Arlington Police Officers who were present and/or participated in a "jiu jitsu"-style training exercise that ended in tragedy. Appellant sues the four officers who allegedly acted as the suspect in the simulations (Appellees Jastin Williams, Jonathan Bucek, David Kurbinsky, and Bradley McNulty); the supervisor who called 911 twice (Appellee Bateman); and ten other officers who were present in the gym (Appellees Richard Coleman, Tyler Ferrell, Patrick Knight, Michael Leonesio, Leonard Ray, Ronnie McCoy, Bobby Mugueza, Officer Norwood, Connor Shanahan, and Sean Wheatly).

This appeal raises the following issues:

- Did Appellant plead facts sufficient to defeat the Individual Appellees' entitlement to qualified immunity from Appellant's claims of excessive force, violation of bodily integrity, and denial of medical care? In other words, did Appellant's Fourth and Fourteenth Amendment claims meet the *Twombly*/*Iqbal*[1] plausibility standard?

---

[1] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

1

- Did Appellant allege facts sufficient to establish a violation of clearly established rights in connection with her theory that a cadet, who could quit the training at any time, was "seized" during the training exercise?

- Did Appellant allege facts sufficient to establish all elements of an excessive force claim against Appellees Jastin Williams, Jonathan Bucek, David Kurbinsky, and Bradley McNulty?

- Did Appellant allege facts sufficient to establish all elements of a bystander claim and/or a failure-to-supervise claim against the Individual Officer Appellees in her sparse Second Amended Complaint that alleged Appellee Bateman called 911 twice, unidentified Appellees carried the cadet off the jiu jitsu mat, unidentified Appellees performed CPR in the breakroom, and otherwise the Individual Officer Appellees were merely present at the time of the alleged constitutional violations?

## STATEMENT OF THE CASE

### A. Procedural History

Appellant filed her Original Complaint on March 5, 2024. ROA.18. Appellant filed her First Amended Complaint on March 28, 2024. ROA.166. Appellant's Second Amended Complaint was filed on May 13, 2024. ROA.484–586. Appellant's Second Amended Complaint is the live pleading.

Additionally, the video referenced in Appellant's Second Amended Complaint is contained in the record. ROA.314.

## B. Factual allegations.

Marquis Kennedy ("Mr. Kennedy") was employed by the City of Arlington and was, in that capacity, a cadet in the Arlington Police Academy. ROA.485. During a training exercise on September 23, 2022, Mr. Kennedy indicated to supervising officers that he was in some type of medical distress. ROA.485. Two days later, Mr. Kennedy passed away. ROA.546. His death certificate states that the primary cause of death was "unknown etiology of cardiac arrest but likely atherosclerotic cardiovascular disease." ROA.555. Similarly, the forensic autopsy reported there was "No apparent trauma." ROA.546.

Appellant alleges that "ten weeks prior to [Mr. Kennedy's] death, a pre-employment physical examination by Concentra Medical Centers … deemed Fallen Officer Kennedy healthy and fit for training." ROA.490. Appellant alleges that part of that training was "the 'fight for your life' simulation." ROA.491. Appellant describes this simulation as the cadet engaged "in physical struggles with fellow officers." ROA.485. More specifically, Appellant alleges that for approximately 16 minutes, Mr. Kennedy "was subjected to 'Gracie Survival Tactics' jiu-jitsu combat training … and being *continuously* attacked for 15–26 minutes by 4 Gracie-trained, hydrated, rested, protective gear-wearing instructors/Police Officers." ROA.491–92.

Appellant later identifies the four "Gracie-trained" police officers as Appellees Jastin Williams, Jonathan Bucek, David Kurbinsky, and Bradley McNulty.[2] ROA.492–94. Furthermore, Appellant alleges that "in the cadet class that immediately preceded Kennedy's cadet class, a significant number of cadets quit the training because of the repeated and excessive use of force by the trainers." ROA.506.

Appellant's Second Amended Complaint purports to describe the training exercise Mr. Kennedy was engaged in based on an affidavit from Brittany Kennedy, who was not present at the training exercise, but viewed a video of the training exercise. ROA.492, n.2. Far from the frenzied melee described in Appellant's Second Amended Complaint and Ms. Kennedy's affidavit, the video of Cadet Kennedy participating in the exercise demonstrates that the sequence of events was slow and deliberate in an air-conditioned gym. *See* ROA.314.

Appellant alleges Appellee Williams led the first simulation and that the simulation took "approximately 3 minutes and 38 seconds." ROA.493. Appellant alleges that Appellee Bucek led the second simulation and that the second simulation took "approximately 4 minutes." ROA.493. Appellant alleges that Appellee

---

[2] Because this is a Rule 12(b)(6) motion to dismiss, the Court must accept as true all *well-pleaded* facts. *See Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004). Defendant Officers accept as true <u>only</u> the well-pleaded facts in Plaintiff's Second Amended Complaint and <u>only</u> accepted them for the purposes of the Motion to Dismiss. In fact, Defendant McNulty was not on scene during the simulation and is not properly named in this lawsuit.

Kurbinsky led the third simulation, which took "approximately 4 minutes." ROA.493. Appellant also alleges that during the third simulation, an instructor "verbally told [Mr. Kennedy] which techniques to complete." ROA.493. Appellant alleges that Appellee McNulty led the fourth simulation and that the simulation was stopped "[a]fter about 25 seconds" when it was clear that Cadet Kennedy could not continue. ROA.494. Appellant alleges that "2 people" carried Kennedy to the break room. ROA.494.

Less than ten minutes later, Appellant identifies Appellee Shelly Bateman as calling for EMS. ROA.494. Appellant alleges that four minutes later, Appellee Bateman makes a second call for EMS and indicates "that they have begun CPR and are attempting to use the AED to revive [Mr. Kennedy]." ROA.495. Another call to EMS is made by an unidentified Appellee "twelve minutes after EMS was initially requested." ROA.495.

Appellant alleges that the Individual Appellees acted "consistent with how Arlington Police Officers are trained by the City and Gracie Global." ROA.498. Appellant further alleges that while the Individual Officer Appellees acted consistent with their training, "[t]he City did not, but should have, also trained its officers to know when a cadet was in medical distress and how to treat it before causing serious bodily injury and death." ROA.498. Appellant also alleges that "Defendants failed to follow proper medical guidelines." ROA.504. However, Appellant fails to

describe what actions the Individual Appellees took during the incident other than Appellee Bateman (who called for EMS) and the four Appellee Officers who engaged in the simulations.

No allegations regarding Appellees Richard Coleman, Tyler Ferrell, Patrick Knight, Michael Leonesio, Leonard Ray, Ronnie McCoy, Bobby Mugueza, Officer Norwood, Connor Shanahan, or Sean Wheatly appear in Appellant's Second Amended Complaint.

### SUMMARY OF THE ARGUMENT

This Court should affirm the District Court's conclusion that Appellant failed to plausibly plead facts in her Second Amended Complaint to show that Cadet Kennedy was ever "seized" in the constitutional sense.

Cadet Kennedy was voluntarily participating in training exercise that ended in tragedy. A constitutional seizure, however, requires that officers have an intent to detain, investigate, or place an individual in custody. This was a consensual encounter in the gym at the police academy. Like all any at-will employee, Kennedy was free to end the exercise. There was never an intent to seize Kennedy and Kennedy consented to the nature of the contact. Accordingly, there was no Fourth Amendment violation.

Furthermore, Appellant's allegations only address the actions of six of the fifteen Individual Officer Appellees. Four of the six are alleged to have acted as the

suspect in the training exercises. Two of the six are merely alleged to have stopped the training exercise and called for 9-1-1. The remaining nine are being sued as bystanders for their mere presence in the gym. This Court has already ruled that such a theory is insufficient to state a claim against those nine officers.

Appellant's Fourteenth Amendment claims fair no better. Appellant asserts that the Individual Officer Appellees "willfully disregarded" Cadet Kennedy's medical condition and acted with deliberate indifference. But Appellant admits that the Individual Officer Appellees acted consistent with their training. In fact, they took action intended to save Kennedy's life. They stopped the exercise. They called 9-1-1 multiple times. They performed CPR on Kennedy. This Court has long held that even unsuccessful action defeats a deliberate indifference assertion. Appellant's factual allegations preclude a finding of deliberate indifference.

The judgment of the District Court should be affirmed.

## ARGUMENTS AND AUTHORITIES

### A.    The Standard for a Motion to Dismiss under Rule 12(b)(6).

This Court reviews "orders on Rule 12(b)(6) motions to dismiss for failure to state a claim under the de novo standard of review." *McKay v. LaCroix*, 117 F.4th 741, 746 (5th Cir. 2024) (citing *Petrobras Am., Inc. v. Samsung Heavy Indus. Co. Ltd.*, 9 F.4th 247, 253 (5th Cir. 2021)). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim

to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). "Dismissal is proper when a plaintiff fails to allege any set of facts in support of his claim which would entitle him to relief, or if the complaint lacks and allegation regarding a required element necessary to obtain relief." *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016) (internal quotations and citations omitted).

Courts only accept as true the "well pleaded" facts in a plaintiff's complaint— that is, those which state specific facts to support the claim, not merely conclusions and unwarranted factual deductions. *Tuchman v. DSC Comms. Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994); *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990). A court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). In fact, the court should "not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010).

To avoid dismissal, a plaintiff must allege all the elements of a claim. *Tuchman*, 14 F.3d at 1067. The court should dismiss a complaint if it lacks an allegation regarding one of the required elements of a cause of action. *See Keane v. Fox TV Stations, Inc.*, 297 F. Supp. 2d 921, 925 (S.D. Tex. 2004) (*citing Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995)). As explained herein, Plaintiff

failed to allege "enough facts to state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level."

## B.     Appellant's Burden to Overcome Qualified Immunity.

Qualified immunity "adds a wrinkle" to §1983 pleadings. *Arnold v. Williams*, 979 F.3d 262, 266–67 (5th Cir. 2020). "Although nominally an affirmative defense, the plaintiff has the burden to negate the assertion of qualified immunity once properly raised." *Collier v. Montgomery*, 569 F.3d 214, 217–18 (5th Cir. 2009). Qualified immunity is a robust defense which "protects all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (citation omitted). Qualified immunity represents the norm, and it should be denied only in rare circumstances. *Rich v. Palko*, 920 F.3d 288, 294 (5th Cir. 2019); *see also Morrow v. Meachum*, 917 F.3d 870, 876 (5th Cir. 2019) (the Supreme Court holds that courts "must think twice before denying qualified immunity"). Officials exercising discretionary authority are entitled to the defense of qualified immunity unless at the time and under the circumstances of the challenged conduct **all** reasonable officers would have realized the conduct was prohibited by the federal law on which the suit is founded. *Dudley v. Angel*, 209 F.3d 460, 462 (5th Cir. 2000); *Pierce v. Smith*, 117 F.3d 866, 871 (5th Cir. 1997). The question is whether a reasonable officer **could** have believed that the actions of the defendant officer were lawful in light of clearly established law and the information

9

the officer possessed at the time. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). If reasonable officers could differ on the lawfulness of a defendant's actions, the defendant is entitled to qualified immunity.

"'A plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity.'" *Id.* (quoting *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012)). To defeat qualified immunity, a plaintiff must show: (1) that the official violated a statutory or constitutional right; and (2) that the right was clearly established at the time of the challenged conduct, in the specific context of the case. *Scott v. Harris*, 550 U.S. 372, 377 (2007); *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). Courts have discretion in deciding which prong to address first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The "clearly established" question is "a doozy" for Appellant, who bears the heavy burden of demonstrating that relevant precedent has placed the constitutional question beyond debate.[3] A court must ask whether the law so clearly and unambiguously prohibited the defendant's conduct that every reasonable official

---

[3] *Morrow*, 917 F.3d at 874; *see also District of Columbia v. Wesby*, 583 U.S. 48, 138 S.Ct. 577, 589 (2018). At present, only U.S. Supreme Court precedent unequivocally "qualif[ies] as controlling authority for the purposes of qualified immunity." *Wesby*, 138 S.Ct. at 591, n.8. Additionally, clearly established law arises only from holdings, not dicta. *Morrow*, 917 F.3d at 875.

would understand that his actions violated the law. *Turner v. Lieutenant Driver*, 848 F.3d. 678, 686 (5th Cir. 2017). "It is the plaintiff's burden to find a case in his favor that does not define the law at a high level of generality." *Rich*, 920 F.3d at 294. "Abstract or general statements of legal principle untethered to analogous or near-analogous facts are not sufficient to establish a right 'clearly' in a given context; rather, the inquiry must focus on whether a right is clearly established as to the specific facts of the case." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015).

## C.    The Video is Part of Appellant's Complaint.

In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, factual information related to the inquiry is limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201. *See Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *R2 Inves. LDC v. Phillips*, 401 F.3d 638, 640 n.2 (5th Cir. 2005). When a defendant attaches documents to its motion that are referenced in the complaint and are central to the plaintiff's claims, the court can also properly consider those documents. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). "In so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the

elementary determination of whether a claim has been stated." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000).

Here, Appellant's Second Amended Complaint contains references and citations to the video "recording" of the four fight simulations. ROA.492–94. Appellant describes the four fight simulations in hyperbolic language. ROA.492–94. The video, however, speaks for itself. *See Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011) (finding video evidence is due greater weight than are the parties' competing declarations). The video contradicts the dramatic fight scene Appellant paints to overcome the fact, noted in Appellant's exhibits, that Mr. Kennedy suffered no apparent trauma from the four simulations. ROA.546.

## D. This was a Consensual Encounter that Does not Implicate the Fourth Amendment.

Prior to 2001, the Supreme Court advised lower courts that "the better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)). In *Saucier v. Katz*, 533 U.S. 194, 201 (2001), the Supreme Court made that suggestion a mandate, requiring lower courts to resolve the first question (whether there was a constitutional violation) before considering the second question (whether the law was clearly established). *See Pearson*, 555 U.S. at 232. In 2009, however, the Supreme Court

reversed *Saucier* and restored discretion to lower courts to decide whether or not a ruling on the constitutional question should precede consideration of whether the law was clearly established. *Id.* at 236.

There are three types of police-citizen interactions: (1) consensual encounters that do not implicate the Fourth Amendment; (2) investigative detentions that are Fourth Amendment seizures of limited scope and duration, which a reasonable suspicion of criminal activity must support; and (3) arrests, which are constitutional only if supported by probable cause. *Furr v. State*, 499 S.W.3d 872, 877 (Tex. Crim. App. 2016); *Wade v. State*, 422 S.W.3d 661, 667 (Tex. Crim. App. 2013); *State v. Woodard*, 341 S.W.3d 404, 410–11 (Tex. Crim. App. 2011). Not every encounter with a police officer implicates the Fourth Amendment. *Florida v. Bostick*, 501 U.S. 429, 434 (1991).

Appellant alleges that Mr. Kennedy "was a smart, well-educated, qualified, and apparently healthy forty-year-old male hired to serve and protect the community." ROA.490. Undoubtedly, Mr. Kennedy was an employee who was free to end the simulations at any time. "In fact, in the cadet class that immediately preceded Kennedy's cadet class, a significant number of cadets quit the training because of the repeated and excessive use of force by the trainers." ROA.506. In other words, Appellant admits that the simulations were part of a voluntary, rigorous

training program.[4] This means that the Fourth Amendment is not implicated because this was a consensual encounter.

Appellant asserts that the Individual Officer Appellees Williams, Bucek, Kurbinsky, and McNulty acted intentionally and, therefore, there was a seizure. Doc. 48, at 19–21. Appellant argues that the Individual Officer Appellees did not have to intend to injure Mr. Kennedy for their actions to still be intentional. Doc. 48, at 20 ("The law does not require that the individual officers intended to kill or harm Marquis Kennedy, only that they intended to commit the acts that resulted in the harm." (citation omitted)). Appellant, however, is confusing the actual issue. First, there was never an intent to "seize" Mr. Kennedy. Secondly, the encounter was consensual from a common-law standpoint.

## 1.    There was Never an Intent to "Seize" Cadet Kennedy.

Appellant makes clear in her Second Amended Complaint that someone other than Mr. Kennedy stopped the exercise "[a]fter about 25 seconds" into the fourth simulation. ROA.494. Mr. Kennedy did not stop the encounter—a member of the academy staff stopped it. ROA.494. Then "2 people" carried a conscious Mr. Kennedy to the break room. ROA.494. There was never an intent to "seize" Mr.

---

[4] Even if there was a seizure under the Fourth Amendment (there was not), the seizure was objectively reasonable as shown in the video. *County of Los Angeles v. Mendez*, 581 U.S. 420, 427–28 (2017).

Kennedy. He was never detained, restrained, or taken into custody. Mr. Kennedy was voluntarily participating in a training exercise.

"A seizure requires the use of force *with intent to restrain*." *Torres v. Madrid*, 592 U.S. 306, 317 (2021) (emphasis original). The Supreme Court has observed that the Fourth Amendment "addresses 'misuse of power,' … not the accidental effects of otherwise lawful conduct." *Brower v. County of Inyo*, 489 U.S. 593, 596–97 (1989). Indeed, "[t]he writs of assistance that were the principal grievance against which the Fourth Amendment was directed did not involve unintended consequences of government action." *Id.* at 596. While *Brower* dealt with a very different set of facts, its holding makes clear that accidental or unintentional conduct on the part of government actors, such as police officers, does not give rise to a violation under the Fourth Amendment. *Gorman v. Sharp*, 892 F.3d 172, 174 (5th Cir. 2018) (holding training death was not a seizure under the Fourth Amendment) (citing *Stewart v. City of Middletown*, 136 Fed. App'x 881, 882–83 (6th Cir. 2015)); *see also Feirson v. District of Columbia*, 506 F.3d 1063, 1067–68 (D.C. Cir. 2007) (plaintiff failed to state Fourth Amendment violation because he was not seized within the meaning of Fourth Amendment during training exercise involving ASP baton).

Appellant's attempted distinction that the Individual Officer Appellees did not need to intend to harm Mr. Kennedy are inapposite. There was never an intent to restrain Mr. Kennedy. The intent of the Individual Officer Appellees was to assess

whether Mr. Kennedy could demonstrate the instructed fighting techniques. When the Individual Officer Appellees determined Mr. Kennedy needed to stop, they halted the fourth simulation 25-seconds into the exercise and escorted Mr. Kennedy into the breakroom. The District Court was correct that there was no constitutional violation because there was never an attempt to seize Cadet Kennedy. Kennedy was a cadet not a suspect.

### 2.    Cadet Kennedy Consented to the Contact.

The Supreme Court has explained that "[t]o determine the elements of a constitutional claim under § 1983, this Court's practice is to first look to the elements of the most analogous tort as of 1871 when § 1983 was enacted, so long as doing so is consistent with 'the values and purposes of the constitutional right at issue.'" *Thompson v. Clark*, 596 U.S. 36, 43 (2022) (citations omitted). In this case, the most analogous tort would be battery. The Second Restatement of Torts defines battery as an actor "intending to cause a harmful or offensive contact with the person of the other or a third-person, or an imminent apprehension of such a contact, and an offensive contact with the person of the other directly or indirectly results." Restatement (Second) of Torts § 19 (1965). Appellant focuses her argument on the intent element.

The Individual Officer Appellees pointed to the fact that the encounter was consensual. In other words, there was no offensive contact. Contact is "offensive"

when it "would offend the ordinary person"—that is, when such contact "is unwarranted by the social usages prevalent at that time and place at which it is inflicted." *Id*. § 19 cmt. a. The Texas Supreme Court has recognized that "[c]onsent to contact 'negatives the wrongful element of the defendant's act, and prevents the existence of a tort.'" *City of Watauga v. Gordon,* 434 S.W.3d 586, 591 (Tex. 2014) (quoting W. Page Keeton et al., Prosser & Keeton on the Law of Torts, § 18, at 112 (5th ed. 1984)). Appellant focuses on the wrong element of the most analogous tort.

## E.     Appellant's Claims that the Individual Officer Appellees Acted Intentionally Do Not Defeat the Individual Officer Appellees' Entitlement to Qualified Immunity.

The second prong of the qualified-immunity test requires a plaintiff to demonstrate the right was clearly established. Under the second prong, a constitutional right is "clearly established" when the contours of the right are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "Because the focus is on whether the officer had fair notice that [his] conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam). The law is not clearly established that a cadet being injured during a fight-simulation exercise constitutes a constitutional violation—even where the injury results in death.

17

Deciding whether a use of force was objectively reasonable demands "careful attention to the facts and circumstances" relating to the incident, as then known to the officer. *Graham v. Connor,* 490 U.S. at 396 (1989). The inquiry into the reasonableness of police force requires analyzing the "totality of the circumstances." *Barnes v. Felix*, 605 U.S. --, 145 S. Ct. 1353, 1358 (2025); *County of Los Angeles v. Mendez,* 581 U.S. 420, 427–28 (2017); *Tennessee v. Garner,* 471 U.S. 1, 9 (1985). The totality of the circumstances show that the use of force in a training exercise is reasonable for the reasons explained above.

The Constitution does not "protect public employees from inherent job-related risks," even where the employer recklessly takes actions that increase employees' exposure to those risks. *Estate of Phillips v. District of Columbia*, 455 F.3d 397, 407 (D.C. Cir. 2006) (employer's actions recklessly increased the intensity of fire while plaintiff was inside building fighting it). In these circumstances, the danger that the employee faced was within the full understanding and contemplation of the employee when he or she took the job, and if the employee feels that the risks of the job—as enhanced by reckless supervisory decision making—are too severe, the employee can always choose to "walk away" from the job. *Slaughter v. Mayor and City Council of Baltimore*, 682 F.3d 317, 322 (4th Cir. 2012) (dismissing claim by estate of firefighter trainee killed during live-burn training exercise). There is no clearly established law providing any of the Individual Officer Appellees fair notice

that participating in a defensive-tactics simulation could result in constitutional violation. In fact, there is a case on point finding the exact opposite.

In *Carty v. Rodriguez*, 470 Fed. App'x 234 (5th Cir. 2012) (per curiam), the Fifth Circuit held two defensive-tactics supervisors were entitled to qualified immunity when a cadet suffered severe brain trauma and died a week after participating in a drill. *Id*. at 236. Just like Appellant in this case, the plaintff in *Carty* analogized to the liberty interest in bodily integrity in the school context. *Compare* ROA.501 (citing *Doe v. Taylor Ind. Sch. Dist.*, 15 F.3d 443 (5th Cir. 1994), *with Carty*, 470 Fed. App'x at 239 (quoting from the same case). Decisions regarding schoolchildren simply do not put a reasonable officer on notice that planning, supervising, and conducting a defensive tactics simulation is conduct that could have violated Mr. Kennedy's constitutional rights. *Carty*, 470 Fed. App'x at 239–40. Accordingly, the claims against the Individual Officer Appellees were properly dismissed because the law was not clearly established that they could be committing a constitutional violation.

Appellant's argument that the Individual Officer Appellees "cannot attack or punch a coworker, deny him medical care, and then claim that the 'workplace environment' somehow shields their conduct" fails. First, there was no constitutional violation in the first instance. Second, Appellant's argument attempts to define the alleged constitutional violation at too general a level. *Harmon v. City of Arlington*,

16 F.4th 1159, 1166 (5th Cir. 2021) ("And, as the Supreme Court has repeatedly admonished lower courts, we must define that constitutional question with specificity." (citations omitted)). Appellant acknowledges that in *Collins v. City of Harker Heights*, 503 U.S. 115 (1992), the Supreme Court rejected, as a constitutional violation, a claim that the city failed to provide a reasonably safe work environment. Doc. 48, at 25. Appellant fails to point to any cases holding a constitutional violation under a similar circumstance. Appellant does not even address head-on *Gorman v. Sharp*, 892 F.3d 172 (5th Cir. 2018), which was relied on by the lower court. Appellant simply does not show that the law was clearly established that any police officer (whether supervising, observing, planning, or participating) could be held liable for a constitutional violation under the circumstances alleged in the Second Amended Complaint.

## F.     Appellant's Second Amended Complaint Fails to Make the Individualized Allegations Necessary to Overcome the Officers' Entitlement to Qualified Immunity.

Under §1983, the conduct of each defendant official must be considered individually. *Meadours v. Ermel*, 483 F.3d 417, 421 (5th Cir. 2007) (citing *Stewart v. Murphy*, 174 F.3d 530, 537 (5th Cir. 1999)); *see also Cope v. Cogdill*, 3 F.4th 198, 207 n.7 (5th Cir. 2021) (noting where it was "unclear exactly [which officer] was responsible for each decision" that the "plaintiff must [show] that each Government-official defendant, through the official's own individual actions, has violated the

Constitution"); *Shefeik v. Busby*, 836 F. App'x 315, 317 n.1 (5th Cir. 2021) ("We consider qualified immunity as to each defendant individually." (citations omitted)). When, as here, multiple government actors are defendants and assert qualified immunity, the court must "evaluate each officer's actions separately, to the extent possible". *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012). Plaintiffs' Second Amended Complaint fails to alleged the particular, individualized allegations which would allow the Individual Officer Appellees to respond or any court to analyze Appellant's claims.

On the face of Appellant's Second Amended Complaint, it is not clear what each individual officer is alleged to have done. It is only clear that Appellee Bateman called (at least twice) for EMS. Appellees Jastin Williams, Jonathan Bucek, David Kurbinsky, and Bradley McNulty are alleged to have used excessive force in the simulations. Other than those five officers, Appellant failed to address any Appellee individually. No individualized allegations regarding Appellees Richard Coleman, Tyler Ferrell, Patrick Knight, Michael Leonesio, Leonard Ray, Ronnie McCoy, Bobby Mugueza, Officer Norwood, Connor Shanahan, or Sean Wheatly appear in Appellant's Second Amended Complaint. It is not clear exactly what each individual Appellee is alleged to have done that plausibly shows a violation of a clearly established constitutional right. It is not even clear where those individual officers

were or what they saw based on Appellant's Second Amended Complaint. Accordingly, those Appellees were properly dismissed.

## G.     Appellant Fails to Establish the Elements of Bystander Liability.

Appellant asserts in her Statement of the Case that Appellees Bateman, Coleman, Ferrell, Knight, Leonesio, Ray, McCoy, Mugueza, Norwood, Shanahan, and Wheatley were "sued as bystanders or supervisors who failed to intervene to prevent the constitutional violations committed by Williams, Bucek, Kurbinsky, and McNulty." Doc. 48, at 12–13. Appellant explains that the lower court found no constitutional violation and, therefore, dismissed these individual officers. Appellant does not otherwise address any legal basis for reinstating the supervisor and bystander liability claims against the Individual Officer Appellees. Accordingly, the issue has been waived. *Amstutz v. Harris County*, 144 F.4th 773, 776–77 (5th Cir. 2025) (citations omitted).

Specifically, only Appellees Bateman, Knight, Williams, Bucek, Kurbinsky, and McNulty are mentioned more than once in Appellant's brief. Appellee Bateman is alleged to have been the "Academy Policy Coordinator" who made two calls to 911, recognized that Cadet Kennedy was "extremely fatigued," and allegedly refused Cadet Kennedy the opportunity to take a break. Doc. 48, at 11, 12, 22, and 23. Appellee Knight allegedly asked Cadet Kennedy if he needed an ambulance. Doc. 48, at 11. Appellant's Second Amended Complaint is equally devoid of detail

as to why Appellees Coleman, Ferrell, Leonesio, Ray, McCoy, Mugueza, Norwood, Shanahan, and Wheatley are being sued other than they were allegedly at the gym.

Plaintiffs alleged that all of the Individual Officer Appellees are guilty of bystander liability (also sometimes referred to as "failure to intervene"). An officer is liable for failure to intervene when that officer: (1) knew a fellow officer was violating an individual's constitutional rights, (2) was present at the scene of the constitutional violation, (3) had a reasonable opportunity to prevent the harm but nevertheless, and (4) chose not to act. *Joseph on behalf of Estate of Joseph v. Bartlett,* 981 F.3d 319, 343 (5th Cir. 2020). Bystander liability requires more than mere presence in the vicinity of the violation; "we also consider whether an officer 'acquiesced in' the alleged constitutional violation." *Whitley v. Hannah*, 726 F.3d 631, 647 (5th Cir. 2013) (quoting *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995).

Again, Appellant fails to plead specific facts that both allow the court to draw the reasonable inference that each Individual Officer Appellee is liable for the harm Appellant has alleged and that defeats a qualified immunity defense with equal specificity. *Backe*, 691 F.3d at 648. Appellant does no more than allege that all the Individual Officer Appellees were in the gym: "[a]t all times, there was adequate time and opportunity for all of the Individual Officer Defendants to intervene to prevent the use of plainly excessive force and prevent Kennedy's death." ROA.502. Appellant does not specifically address the bystander and supervisory liability

23

claims because Appellant alleges that the District Court opined that no constitutional violation occurred.

**H.    Appellant Cannot Avoid the Result Dictated by *Collins* Regarding the Fourteenth Amendment Claims.**

"The touchstone of due process is protection of the individual against *arbitrary action* of government." *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998) (emphasis added) (internal quotation marks and alteration omitted). "Arbitrary action," however, is used in a constitutional sense, which encompasses "only the most egregious official conduct," namely that which "shocks the conscience." *Id.* at 846. Defining conduct that shocks the conscience does not draw on any traditional standard of liability from tort law but rather refers, as a constitutional construct of substantive due process, to "conduct intended to injure in some way unjustifiable by any government interest." *Id.* at 849.

To be sure, a lower-level duty of culpability may amount to a substantive due process violation in those situations where the government is required "to take care of those who have already been deprived of their liberty"—such as pretrial detainees, persons in mental institutions, convicted felons, and persons under arrest. *See Collins v. City of Harker Heights*, 503 U.S. 115, 127 (1992) (collecting cases). In those circumstances, the Supreme Court has held that the government's *deliberate indifference* to the care of persons in its custody can shock the conscience for purposes of finding a substantive due process violation. *See Lewis* 523 U.S. at 849–

50. But, as *Collins* explains, "the Due Process Clause is not a guarantee against incorrect or ill-advised personnel decisions[, n]or does it guarantee municipal employees a workplace that is free from unreasonable risks of harm." *Id.* at 129.

The Supreme Court in *Collins*, made clear that this standard does not apply to persons in an employment relationship with the government. "Petitioner cannot maintain ... that the city deprived Collins of his liberty when it made, and he voluntarily accepted, an offer of employment." 503 U.S. at 128. In *Collins*, the widow alleged that: "her husband's death was caused by the City's policy of not providing safety training to its employees; there was a custom for safety equipment to either not be taken to, or used at, the job site; no warnings or instructions were given on the hazards in entering sewer lines or how to protect against them; several months before her husband's death, his supervisor entered a manhole and was rendered unconscious, placing the City on notice of the risks in sending its employees into the lines; the City systematically and intentionally failed to provide the equipment, training or instruction required by the Texas Hazard Communication Act; and *inter alia*, this pattern of behavior by the City was a custom and policy of deliberate indifference to the Fifth and Fourteenth Amendment rights of its employees." *Collins v. City of Harker Heights,* 916 F.2d 284 (5th Cir. 1990). The Supreme Court held that, even though the alleged facts might have shown *deliberate indifference,* in the context of a voluntary employment relationship, such conduct

was not "arbitrary, or conscience shocking, in a constitutional sense" and would not

support a substantive due process violation. *Id*. at 128.

## I.     Appellant's Deliberate Indifference Argument is Conclusory and Contradicted by Her Factual Allegations.

Appellant asserts that the Individual Officer Appellees "willfully disregarded" a known or excessive risk. Doc. 48, at 23. This assertion, however, is nothing more than a conclusory allegation. What Appellant makes clear in her Second Amended Complaint is that the Individual Officer acted "consistent with how Arlington Police Officers are trained." ROA.498. Appellant further alleges that the Individual Officer Appellees stopped the training exercise 25 seconds into the fourth simulation; they started CPR; they called for EMS multiple times; and they attempted to use a defibrillator. ROA.494–95. Appellant makes conclusory statements and naked assertions devoid of further factual enhancement that this was "deliberate indifference." But those alleged actions are not deliberate indifference.

This Court has observed that "[t]he deliberate indifference standard is a high one," and that "[a]ctions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and thus do not divest the official of qualified immunity." *Doe v. Dallas Ind. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998). The fact that all the remedial efforts the Individual Officer Appellees undertook (from stopping the training to trying the AED) were unsuccessful is of no moment. It is undisputed that the Individual Officer Appellees

took action. They took action consistent with their training. Appellant's factual allegations in her Second Amended Complaint show that the Individual Officer Appellees were never deliberately indifferent.

### CONCLUSION

For all of these reasons, this Court should affirm the District Court's order granting dismissal and final judgment.

Respectfully submitted,

/s/ Thomas P. Brandt
**Thomas P. Brandt**
State Bar No. 02883500
tbrandt@thompsoncoe.com
**Christopher D. Livingston**
State Bar No. 24007559
clivingston@thompsoncoe.com
**THOMPSON, COE, COUSINS & IRONS, LLP**
700 North Pearl Street, 25th Floor
Dallas, TX 75201
Telephone: 214-871-8200
Facsimile: 214-871-8209

Counsel of Record for
Defendants-Appellees
Shelly Bateman, Jonathan P. Bucek, Richard Coleman, Tyler Ferrell, Patrick Knight, David Kurbinsky, Michael Leonesio, Leonard Ray, Ronnie McCoy, Bobby Mugueza, Officer Norwood, Connor Shanahan, Sean Wheatly, Jastin D. Williams, and Bradley McNulty

**CERTIFICATE OF SERVICE**

This is to certify that the foregoing instrument has been served via the Court's

ECF filing system in compliance with Rule 25(b) and (c) of the Federal Rules of

Appellate Procedure, on August 27, 2025 on all registered counsel of record, and

has been transmitted to the Clerk of the Court.

 /s/ Thomas P. Brandt
**Thomas P. Brandt**
Counsel of Record for
for Defendants-Appellees
Shelly Bateman, Jonathan P. Bucek, Richard Coleman, Tyler Ferrell, Patrick Knight, David Kurbinsky, Michael Leonesio, Leonard Ray, Ronnie McCoy, Bobby Mugueza, Officer Norwood, Connor Shanahan, Sean Wheatly, Jastin D. Williams, and Bradley McNulty

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT,
TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS**

I certify that (1) this document complies with the type-volume limit of FED.
R. APP. P. 32(a)(7)(B) because it contains 7,654 words, excluding the parts exempted
by rule and (2) this document complies with the typeface requirements of FED. R.
APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) because
it has been prepared in a proportionately spaced typeface using Microsoft Word in
14-point Times New Roman with 12-point for footnotes.  I used the word-count
feature on Microsoft Word to arrive at this number.

/s/ Thomas P. Brandt
Counsel of Record
for Defendants-Appellees
Shelly Bateman, Jonathan P. Bucek, Richard
Coleman, Tyler Ferrell, Patrick Knight,
David   Kurbinsky,   Michael   Leonesio,
Leonard   Ray,   Ronnie   McCoy,   Bobby
Mugueza,   Officer   Norwood,   Connor
Shanahan, Sean Wheatly, Jastin D. Williams,
and Bradley McNulty

20736380

29