No. 25-10259

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

Brittney Kennedy, Individually and as Surviving Spouse, on Behalf of Minor M.S.K. and as Anticipated Personal Representative of the Estate of Marquis Kennedy,

Plaintiff-Appellant

v.

City of Arlington, Texas; Shelly Bateman; Jonathan P. Bucek; Richard Coleman; Tyler Ferrell; Patrick Knight; David Kurbinsky; Michael Leonesio; Leonard Ray; Ronnie McCoy; Bobby Mugueza; Officer Norwood; Connor Shanahan; Sean Wheatley; Jastin D. Williams; Bradley McNulty,

Defendants-Appellees

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS, FORT WORTH DIVISION

APPELLANT'S REPLY BRIEF

**Thad D. Spalding**
State Bar No. 00791708
tspalding@dpslawgroup.com
**Shelby J. White**
State Bar No. 24084086
swhite@dpslawgroup.com
**Durham, Pittard & Spalding, LLP**
P.O. Box 224626
Dallas, Texas 75222
Telephone: (214) 946-8000
Facsimile: (214) 946-8433

**Roland Witherspoon**
State Bar No. 24086097
litigation@withlaw.com
**Witherspoon Law**
7290 Crosswater Ave.
Tyler, Texas 75703
Telephone: (903) 597-2500
Facsimile: (866) 269-3770

**ATTORNEYS FOR PLAINTIFF-APPELLANT**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...........................................................................iii

I.      The pleadings demonstrate that Marquis's participation in the "Fight for Your Life" training simulation, even if initially voluntary, ceased to be so when Officers would not allow Marquis to stop.............................................................1

II.     Kennedy alleged an intent to seize Marquis because the training simulation continued after Marquis dropped his "officer in distress" card and after he was clearly physically unable to continue ......................................................3

III.    Kennedy adequately alleges claims against the several officers who failed to act...........................................................5

IV.     Kennedy adequately alleged a bystander claim .....................................8

V.      The Officers' reliance on *Collins v. City of Harker Heights* continues to be misplaced .......................................................10

VI.     Kennedy was entitled to not have his medical emergency ignored by his fellow officers..................................................12

CONCLUSION ...................................................................14

CERTIFICATE OF COMPLIANCE ...............................................16

CERTIFICATE OF SERVICE ....................................................17

## TABLE OF AUTHORITIES

**Cases**                                                                   **Page(s)**

*Allen v. Hays*,
   65 F.4th 736 (5th Cir. 2023) ............................................................. 12

*Amstutz v. Harris Cnty.*,
   144 F.4th 773 (5th Cir. 2025) ............................................................ 8

*Bivens v. Forrest Cty.*,
   No. 2:13-CV-8-KS-MTP, 2015 WL 1457529 (N.D. Miss March
   30, 2015) ............................................................................................ 6

*Carswell v. Camp*,
   54 F.4th 307 (5th Cir. 2022) .............................................................. 8

*Collins v. City of Harker Heights, Tex.*,
   503 U.S. 115 (1992) ...................................................................... 10, 11

*Dyer v. City of Mesquite, Tex.*,
   No. 3:15-CV-2638-B, 2017 WL 118811 (N.D. Tex. Jan 12, 2017) .................. 7

*Greene v. DeMoss*,
   No. 21-30044, 2022 WL 3716201 (5th Cir. Aug. 22, 2022) ................ 5, 6, 7

*Hamilton v. Kindred*,
   845 F.3d 659 (5th Cir. 2017) ............................................................ 10

*Moore v. City of Houston*,
   No. 4:23-cv-3048, 2024 WL 4351346 (S.D. Tex. Aug. 28, 2024) ................ 8

*Navejas v. Jaso*,
   700 F. Supp. 3d 532 (W.D. Tex. 2023) ............................................. 8

*Nerren v. Livingston Police Dep't*,
   86 F.3d 469 (5th Cir. 1996) .............................................................. 12

*Poole v. City of Shreveport*,
   691 F.3d 624 (5th Cir. 2012) .............................................................. 5

## TABLE OF AUTHORITIES (CONT'D)

**Cases (cont'd)**                                                              **Page(s)**

*Schultea v. Wood,*
47 F.3d 1427 (5th Cir. 1995).................................................................6

*Sinegal v. City of El Paso,*
414 F. Supp. 3d 995 (W.D. Tex. 2019) ................................................7

*Terry v. Ohio,*
392 U.S. 1 (1968)...................................................................................3

*Vardeman v. City of Houston,*
55 F.4th 1045 (5th Cir. 2022)..............................................................2

*Virtuoso, Ltd. v. Web Deals Direct, LLC,*
No. 3:20-cv-383-K, 2021 WL 784140 (N.D. Tex. Jan. 29, 2021) ....................5

*United States ex rel. Silingo v. Wellpoint, Inc.*
904 F.3d 667 (9th Cir. 2018) ...............................................................6

*Waybright v. Federick Cnty, MD,*
528 F.3d 199 (4th Cir. 2008) .............................................................11

**Rules**

5th Cir. R. 32.1....................................................................................17

Fed. R. Civ. P. 8...................................................................................6

Fed. R. Civ. P. 12(b)............................................................................8

Fed. R. Civ. P. 12(b)(6) ....................................................................5, 9

## REPLY BRIEF OF APPELLANTS

Appellant-Plaintiff, Brittney Kennedy, Individually and as Surviving Spouse, on Behalf of Minor, M.S.K. and as anticipated Personal Representative of the Estate of Marquis Kennedy ("Kennedy"), files this Reply Brief to address the issues and arguments raised in both the City of Arlington, Texas's and Individual Officers' Appellees' briefs.

## I.    The pleadings demonstrate that Marquis's participation in the "Fight for Your Life" training simulation, even if initially voluntary, ceased to be so when Officers would not allow Marquis to stop.

There is no real dispute that in signing up to be a cadet, Marquis agreed to participate in Arlington's police training program. And Kennedy has never argued that the seizure occurred by virtue of simply showing up to, and participating in, the training. Rather, the issue is that Marquis ultimately revoked his consent, which was ignored when the officers continued to assault him until he could no longer continue, all *without his consent or agreement to participate in the training exercises*. In particular, there can be no real debate that Marquis revoked his consent when he dropped his "officer in distress" card, which was designed for that very purpose – to end the training exercise because a cadet cannot or does not want to continue. Once Marquis revoked his consent per the protocol, any further

use of force cannot legitimately fall under the rubric of a consensual training encounter. As such, it constitutes a seizure. *Vardeman v. City of Houston*, 55 F.4th 1045, 1052 (5th Cir. 2022).

Kennedy's complaint makes this clear. During the "fight for your life" training simulation, Marquis was denied water despite requesting it.[1] ROA.493. He was not permitted any breaks, was put into positions which denied him air, carried the full weight of the trainers on his chest, was repeatedly punched, and it was made clear to him if he failed to continue, he would fail and must repeat the entire physical training program. ROA.491-492.  Despite his repeated complaints of lightheadedness, thirst, fatigue and his obviously increasingly distressed health condition, his requests for care were met with instructor denials for a sustained period. ROA.491-492. The Officers could observe Marquis's exhausted state and the fact that he was physically incapable of participating in the exercise any longer. ROA.493-494. Yet the City and the officers would have this Court believe that despite being in such clear medical distress that he could not actually participate or

---

[1] Appellant's Second Amended Complaint alleges that (1) cadets over the age of 35 were treated differently, (2)  the published training schedule was not followed, and (3) Marquis was subjected to a "5:00 club" hazing ritual requiring unscheduled, after-hours physical activity the day before the "fight for your life" simulation. ROA.491.

even stand at times, and despite dropping his "officer in distress" card in an attempt to end the simulation, Marquis still consented to being beaten, abused, crushed, and denied air. That position defies logic as much as it ignores Kennedy's complaint.

Accepting this argument would essentially mean that once a cadet entered the training program, he or she could never revoke consent to participate. But that cannot be the case. The law is well-established in the Section 1983 context and elsewhere that a consensual encounter between an officer and another person does not necessarily remain consensual forever and that consent can be revoked. *See Terry v. Ohio,* 392 U.S. 1, 16 (1968).

## II.    Kennedy alleged an intent to seize Marquis because the training simulation continued after Marquis dropped his "officer in distress" card and after he was clearly physically unable to continue.

Appellees ignore the fact that Kennedy revoked his consent to the "fight for your life" training simulation. The "fight for your life" training consisted of four separate simulations. ROA.492-93. By the end of the second simulation, Officer Williams and Corporal Shelly Bateman both admitted that Marquis appeared very tired but neither did anything to stop the simulations, even as Marquis was bent over, panting, and asking for water. ROA.493. Rather, both ordered him to keep going. ROA.493. As the

simulations continued, with training officers putting their full body weight on Marquis's chest and restricting his ability to breathe, Marquis had to be told what techniques to use, and was still unable to perform any of the maneuvers that he had learned. ROA.493. Officer McNulty then began the fourth simulation by repeatedly punching Marquis in the head. ROA.494. By this time, however, Marquis was nearly unconscious, and in fact, when the simulation began, Marquis had to be prompted to engage.  ROA.494.

After being punched in the head twice, Marquis dropped his "officer in distress" card, signaling that he wanted and needed out of the simulation. ROA.494. At that point, Marquis had made a clear statement, per the training protocol, that he was in distress and no longer consented to participating in the training exercise. However, another instructor simply pushed the card away with his foot, and Marquis was punched in the head approximately 10 more times by McNulty.  ROA.494. After approximately 25 seconds, when it was clear Marquis is unable to continue, the simulation was finally stopped. ROA.494.

III. **Kennedy adequately alleges claims against the several officers who failed to act.**

The Officers complain that, as to some of the officers, Kennedy failed to first claim that Kennedy fails to "allege[] the particular, individualized allegations which would allow the Defendant Officers to respond or this Court to analyze Plaintiffs' claims." *See* Officers' Br. at 21. However, the Officers also acknowledge that Kennedy's pleadings are clear as to five of the officers: Bateman, Williams, Bucek, Kurbinsky, and McNulty. *Id.* At the pleading stage, however, individualized allegations against the other officers are impossible and unnecessary.

There is no question that, generally speaking, in a section 1983 case, the conduct of each officer is to be considered separately, *to the extent possible*. *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012).[2] But, individualized pleadings are not always possible and, as such, collective allegations are not always improper. *See Greene v. DeMoss*, No. 21-30044, 2022 WL 3716201, at *3-4 (5th Cir. Aug. 22, 2022); *Virtuoso, Ltd. v. Web Deals Direct, LLC*, No. 3:20-cv-383-K, 2021 WL 784140, at *4 (N.D. Tex. Jan. 29,

---

[2] Tellingly, the Officers only cite summary judgment cases. *See* Officers' Br. at 20-21. The Officers do not cite any Rule 12(b)(6) cases that require such individualized allegations at the initial, pleading stage because at this early stage, before there has been any discovery, it is not always possible to identify each officers' conduct individually.

2021). Just because several officers are alleged to have engaged in the same wrongful act does not mean that those allegations are inadequate under Rule 8. *Greene,* 2022 WL 3716201, at *3. "[A] 'good claim against one defendant d[oes] not become inadequate simply because a co-defendant was alleged to have committed the same wrongful acts.'" *Id.* (quoting *United States ex rel. Silingo v. WellPoint, Inc.,* 904 F.3d 667, 677 (9th Cir. 2018)). General characterizations are only inappropriate when the "facts are known to the plaintiff and are not peculiarly within the knowledge of defendants" and there is no "justification for the lack of individualization." *Schultea v. Wood,* 47 F.3d 1427, 1432 (5th Cir. 1995); *Bivens v. Forrest Cty.,* No. 2:13-CV-8-KS-MTP, 2015 WL 1457529, at *20 (N.D. Miss March 30, 2015)). Not surprisingly, given that Kennedy's case was dismissed on her pleadings, no discovery has been conducted yet or disclosures required. As all parties point out, there is some video of the training that killed Marquis, but even the Officers must concede that the video does not show what everyone was doing throughout the event. Thus, beyond the video, there are very few other facts "known to the plaintiff" that would make individualization possible here.

This approach makes sense given that reality—a section 1983 plaintiff who alleges mistreatment at the hands of a group of officers may not yet be

able to describe with particularity the actions each individual officer took prior to undertaking any discovery. *Dyer v. City of Mesquite, Tex.,* No. 3:15-CV-2638-B, 2017 WL 118811, at *11 (N.D. Tex. Jan 12, 2017); *see also Sinegal v. City of El Paso,* 414 F. Supp. 3d 995, 1004 (W.D. Tex. 2019). In these circumstances, courts simply look to whether the alleged actions, regardless of which particular defendant may have taken them, would state a claim for a constitutional violation, an approach that is consistent with *Greene v. DeMoss. Sinegal,* 414 F. Supp. 3d at 1004. This way, the court can make a preliminary determination on the sufficiency of the pleadings, even in the collective, and then allow limited discovery once the motions to dismiss are resolved, aimed at ascertaining the specific identities and conduct engaged by each officer. *Id.* at 1005.

As a practical matter, the Officers' focus just on individual officers who are all alleged to have done the same thing—failed to intervene to stop their colleagues' use of excessive force or failed to render aid to Marquis when it became apparent that Marquis was in desperate need of medical assistance. The nature of the claims against these officers is difficult to individualize when each and every one of them were in the same room, witnessed the same conduct, and all failed to do anything. It is certainly enough to allow

the Officers to individually respond to the allegations and for this Court to

analyze the sufficiency of Kennedy's claims in the Rule 12(b) context.

Because no more specific allegations at this stage was possible, and because

more specific allegations as to each individual officer was unnecessary since

each Officer did the same thing, dismissal on this basis was improper.[3]

## IV.   Kennedy adequately alleged a bystander claim.[4]

Next, in a somewhat related vein, the Officers complain that Kennedy

did not adequately allege a bystander claim against the Officers because she

---

[3] Admittedly, since *Carswell v. Camp,* 54 F.4th 307 (5th Cir. 2022), was decided, some courts have taken a stricter approach under the mistaken belief that *Carswell* somehow alters the pleading requirements and does not allow a determination to be made on the pleadings based on collective allegations.  *See Navejas v. Jaso,* 700 F. Supp. 3d 532, 537 (W.D. Tex. 2023); *see also Moore v. City of Houston,* No. 4:23-cv-3048, 2024 WL 4351346, at *9-10 (S.D. Tex. Aug. 28, 2024). But, *Carswell* was not a case involving the sufficiency of pleadings, but a case about the scope and timing of qualified immunity discovery.  Kennedy's point is simply that "collective allegations" are appropriate at the pre-discovery stage of litigation and are sufficient without the need for limited discovery. Once the officers' motions to dismiss are denied, as they should have been here, such limited discovery becomes appropriate and should enable Kennedy to make more detailed allegations.

[4] The Officers begin by claiming that Kennedy somehow waived her bystander claim by not addressing it in her opening brief. *See* Officers' Br. at 22.  But, the Magistrate Judge's Report and Recommendation never reached this issue because he didn't need to.  (ROA. 851-868). Moreover, the case the Officers rely on for their argument, *Amstutz v. Harris Cnty.,* 144 F.4th 773 (5th Cir. 2025), does not remotely support it.  Rather, *Amstutz* simply stands for the rather unremarkable proposition that where a party's opening brief barely addresses the district court's analysis and wholly neglects to explain how the district court erred, the argument is inadequate to preserve error. *Amstutz,* 144 F.4th at 777 (a party's failure to defend a claim before the district court constitutes waiver on appeal). Kennedy defended her bystander claim before the district court (ROA.832-834) and, as such, does not waive that claim on appeal.

failed to allege any detail against certain officers other than that "they were allegedly at the gym." *See* Officers' Br. at 23. But, the Officers' argument fails to consider the context in which these claims are made and the actual allegations in the Second Amended Complaint.

As was made clear earlier, individualized allegations to the degree the Officers seem to claim are required may be a requirement at the summary judgment stage, but are not always practical or possible at the Rule 12(b)(6) stage. Even so, Kennedy alleges more "than mere presence in the gym" against these Officers. According to the Second Amended Complaint:

> **65**.    All of the Individual Officer Defendants, like Defendants Williams, Bucek, Kurbinsky, and McNulty, knew that Kennedy was being subjected to unreasonable and excessive force during the "fight for your life" training but failed to ever step in to stop the training, check on Kennedy, or put an end to the training.

> **66**.    At all times, there was adequate time and opportunity for all of the Individual Officer Defendants to intervene to prevent the use of plainly excessive force and prevent Kennedy's death.

> **67**.    By choosing not to intervene, all of the Individual Officer Defendants effectively participated in Defendants Williams, Bucek, Kurbinsky, and McNulty's unconstitutional acts.

(ROA.502). These allegations should be enough to support the bystander claim against the Defendant Officers. *See, e.g., Hamilton v. Kindred,* 845 F.3d 659, 663 (5th Cir. 2017).

## V.    The Officers' reliance on *Collins v. City of Harker Heights* continues to be misplaced.

As it did in the trial court, the Officers continue to trumpet *Collins v. City of Harker Heights* as somehow requiring dismissal of Kennedy's claims because the Fourteenth Amendment's protection does not extend to persons in an employment relationship with the government. *See* Officers' Br. at 25. But, this argument is as short-sighted now as it was when it was raised in the District Court.

The fact that the use of force arose in the context of employee training does not foreclose a constitutional violation. Kennedy does not simply allege that the City failed to provide him a safe workplace, which is the sort of claim that *Collins* rejected.  *See Collins v. City of Harker Heights, Tex.,* 503 U.S. 115, 125-26 (1992) (rejecting, as a constitutional violation, claim that city violated constitutional rights by failing to provide a reasonably safe work environment). Rather, Kennedy alleged that the individual officers violated Marquis's right to be protected from the use of excessive force, the right to

bodily integrity, and the right to be provided medical care. The fact that these constitutional violations took place in the context of the employer-employee relationship does not control the analysis. *Id.* at 119. "The First Amendment, the Equal Protection and Due Process Clauses of the Fourteenth Amendment, and other provisions of the Federal Constitution afford protection to employees who serve the government as well as those who are served by them, and § 1983 provides a cause of action for all citizens injured by the abridgment of those protections." *Id.* at 119-20.

Those protections seem vitally important here in the context of a police department training its own officers on the use of force. In other contexts, courts note the danger of "inject[ing] federal authority into public school playground incidents, football (or even ballet) practice sessions, and class field trips, not to mention training sessions for government jobs that require some degree of physical fitness." *See Waybright v. Federick Cnty, MD,* 528 F.3d 199, 208 (4th Cir. 2008). But, federal jurisprudence already sets the "ground rules" for claims of excessive force, bodily integrity, and the denial of medical care. Just because an officer is training an inexperienced cadet regarding the use of force does not give that officer the authority to use any level of force he or she desires, unbridled by any constitutional restrictions.

If the officers' conduct during training—e.g., continuing to assault a cadet even after he has revoked his consent to participate—would violate the constitutional protections afforded a criminal suspect or arrestee, it should afford Marquis that same protection. *Collins* does not foreclose that prospect.

## VI.    Kennedy was entitled to not have his medical emergency ignored by his fellow officers.

The City brings the seizure issue full circle when it argues that his medical emergency did not render him the same as an incarcerated or institutionalized person with the same rights not to have his fellow officers be deliberately indifferent to his serious medical needs. *See* City's Br. at 29-30.  This argument is as preposterous as it sounds because Marquis was seized by the officers during the "fight for your life" training exercise.  Once he was seized, he enjoyed a constitutional right to medical care during that seizure, which was violated by the officers. *See Nerren v. Livingston Police Dep't,* 86 F.3d 469, 472-73 (5th Cir. 1996) (holding that arrestees are a "subset of pretrial detainees"); *see also Allen v. Hays,* 65 F.4th 736, 747 (5th Cir. 2023) (describing constitutional right to medical care under the Fourteenth Amendment).

After the fourth "fight for your life" simulation exercise was stopped

due to Marquis's clear distress, Officer Knight asked Marquis if he needed an ambulance and Marquis said he did.  OA.494. By this time, Marquis could not stand or walk on his own, and he had to be carried out of the room. ROA.494.

Marquis was taken to a nearby break room and placed on a chair. ROA.494. Despite his clear medical distress, no ambulance was called. Instead, Marquis was left on his own in the break room. ROA.494. He then stopped breathing, lost consciousness, and fell off the chair, landing on his head. ROA.494. Yet even then, he still did not receive any first aid for over 5 minutes. Because the officers ignored his clear medical distress, left him alone without supervision, and failed to timely call for an ambulance, Marquis was without oxygen for over five minutes as he lay dying alone in the break room. ROA.494.

Even when Corporal Shelly Bateman finally called EMS, she significantly downplayed Marquis's condition, describing him simply as "a little overheated." ROA.494. But at that point, he was unconscious and not breathing. When she called again a few minutes later, she finally admitted that Marquis was not breathing and that they had started CPR and were attempting to use a defibrillator to revive him. ROA.495. Twelve minutes

after initially requested, the EMTs arrived, but at that point it was too late to save Marquis. ROA.495.

The severity of Marquis's medical distress was apparent and ignored. He lay unconscious and unbreathing in the break room for at least 5 minutes. The officers knew he was in medical distress when they carried him into the break room, yet they did not leave anyone there to supervise him or provide him with medical care. They did not call for any medical assistance, nor did any of the officers attempt to provide medical care to him during that time. Instead, he was ignored. It was only after Marquis had been unconscious and without oxygen for more than five minutes that anyone attempted to do anything to save him.

## Conclusion

The City and its Officers largely try to hide behind the employment relationship between the City and Marquis to avoid constitutional liability. This Court should not let them.  The simple fact that the employment relationship brought the Officers and Marquis together does not foreclose or forgive their responsibility for using too much force than necessary to train him and then ignoring the serious medical needs their "training" created.

Once Marquis was seized, he was entitled to the same protections as the suspects he was being trained to deal with. Marquis's employer and trainers certainly did not afford him that protection. The law should. This Court should reverse the Final Judgment in favor of the City and the Officers and remand this case so that the merits of this case can be developed and tried.

Respectfully submitted,

By: _/s/ Thad D. Spalding_

**Thad D. Spalding**
State Bar No. 00791708
tspalding@dpslawgroup.com
**Shelby J. White**
State Bar No. 24084086
swhite@dpslawgroup.com
**Durham, Pittard & Spalding, LLP**
P.O. Box 224626
Dallas, Texas 75222
Telephone: (214) 946-8000
Facsimile: (214) 946-8433

and

**Roland Witherspoon**
State Bar No. 24086097
litigation@withlaw.com
**Witherspoon Law**
7290 Crosswater Ave.
Tyler, Texas 75703
Telephone: (903) 597-2500
Facsimile: (866) 269-3770

**COUNSEL FOR PLAINTIFF-APPELLANT**

## CERTIFICATE OF COMPLIANCE

1.  This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 5th Cir. R. 32.1:

    **X**    this document contains <u>3,263</u> words.

    _    this brief uses a monospaced typeface and contains _____ lines of text.

2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5), and 5th Cir. R. 32.1 and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

    **X**    this document has been prepared in a proportionally spaced typeface using **Microsoft® Word for Microsoft 365 MSO (Version 2506 Build 16.0.18925.20076) 64-bit in 14 point, Book Antiqua font**, or

    _    this brief has been prepared in a monospaced typeface using [state name and version of word processing program] with [state number of characters per inch and name of type style].

    */s/ Thad D. Spalding* _____
    **Thad D. Spalding**

CERTIFICATE OF SERVICE

I hereby certify that on this October 2, 2025 a true and correct copy of this document was served upon the following counsel of record via electronic filing pursuant to the Federal Rules of Appellate Procedure:

Joshua Alan Skinner
joshua.skinner@arlingtontx.gov
Cynthia Withers
cynthia.withers@arlingtontx.gov
Alexander J. Lindvall
alexander.lindvall@arlingtontx.gov
City of Arlington
City Attorney's Office
P.O. Box 90231 MS 63-0300
Arlington, Texas 76004-3231

*Attorneys for City of Arlington*

Thomas P. Brandt
tbrandt@fhmbk.com
Christopher D. Livingston
clivingston@fhmbk.com
FANNING HARPER MARTINSON
BRANDT & KUTCHIN, P.C.
One Glen Lakes
8140 Walnut Hill Lane, Suite 200
Dallas, Texas 75231

*Attorneys for Shelly Bateman; Jonathan P. Bucek; Richard Coleman; Tyler Ferrell; Patrick Knight; David Kurbinsky; Michael Leonesio; Leonard Ray; Ronnie McCoy; Bobby Mugueza; Officer Norwood; Connor Shanahan; Sean Wheatley; Jastin D. Williams; Bradley McNulty*

*/s/ Thad D. Spalding*
**Thad D. Spalding**